## ROME RAILWAY & LIGHT COMPANY *v.* FLOYD COUNTY, GEORGIA, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 547.  Argued January 25, 1917.—Decided March 6, 1917.

A street railway company in Georgia, under special acts of the legislature, claimed a perpetual and unconditional franchise right to operate over certain county bridges irrespective of the county's consent. The claim being disputed by the county, the company entered into and fully acted upon certain written agreements with the county purporting to be grants by the county to the company of the right to lay, maintain and operate tracks over the bridges upon certain conditions, including payment to the county for the use of the bridges, the county being governed in the transactions by a statute which limited its power to the granting of temporary uses and privileges subject at all times to revocation. *Held,* partly on the authority of *City Electric Ry. Co.* v. *Floyd County,* 115 Georgia, 655, that whatever may have been the rights of the company origi-

nally, the effect of the compromise agreements, and their execution, was to substitute a temporary grant subject at all times to revocation.

By act of the Georgia legislature (August 15, 1914, Laws 1914, p. 271), Floyd County was authorized to reconstruct the old bridges in Rome, Georgia, requiring, in so doing, the removal of street railway tracks; to grant franchises to operate over new bridges and fix the terms thereof including, as a condition precedent, that the grantee pay one-third of the cost of construction. The act, however, provides that "any corporation now having a franchise shall have the right to use any new bridge upon complying with the reasonable conditions imposed by the" county authorities and the terms of the act. *Held*, that a company which had in effect surrendered its franchise right to use the old bridges in exchange for a temporary grant revocable at the will of the county authorities, could not enjoin them from proceeding under the act to rebuild the bridges and charge the company one-third of the cost as a condition precedent to its use of the new structures.

228 Fed. Rep. 775, affirmed.

The case is stated in the opinion.

*Mr. John C. Doolan*, with whom *Mr. Linton A. Dean, Mr. J. Ed. Dean, Mr. Edmund F. Trabue* and *Mr. Attilla Cox, Jr.*, were on the briefs, for appellant.

*Mr. George E. Maddox*, with whom *Mr. Joel Branham* and *Mr. Mark B. Eubanks* were on the briefs, for appellees.

Mr. Justice McReynolds delivered the opinion of the court.

Within the limits of Rome, Georgia, since 1881, three public bridges have crossed the Etowah and Oostanaula Rivers. Appellant is successor to the Rome Street Rail-Road Company incorporated in 1884 by special act and empowered to construct and operate railroads in that city, also in certain neighboring towns, and, with consent of the Floyd County Board of Commissioners of Roads and

Revenues, for five miles along public roads. Ga. Laws, 1884–5, p. 191, *Id.* p. 235. Authority was given to use horses, electricity, underground cables driven by steam, "or any other appliance that may hereafter be invented or used as motive power." The company began to run horse drawn cars over the city streets and across Howard Street or Second Avenue Bridge as early as 1885; and this mode of operation continued until 1892 or 1893.

The Howard Street Bridge having been destroyed in April, 1886, the county erected a new one upon the same site; thereafter it refused to permit the car company to lay tracks or operate over this without payment therefor and brought suit to enjoin any attempt so to do. In *County of Floyd* v. *Rome Street Railroad Co.*, 77 Georgia, 614, 617 (October Term, 1886), the state Supreme Court held: "The only question made by the record, therefore, is, whether the legislature has authorized the street railroad company to appropriate this bridge to its use in the manner claimed by it, without the county's consent, and without making it compensation. . . . The bridge forms a continuation of the streets of the city across the river and is a part of the same. . . . The legislature, unless restricted by the State constitution, may, even without the consent of a municipality, and without allowing it compensation, authorize railroads to be laid in its highways. . . . But even had the consent of the county of Floyd been required to this use of the bridge by the street railroad company, that assent was given, and when the condition on which it was accorded was accepted and acted upon by the company, it became a binding contract until the license was revoked by the only authority having power to revoke it. . . . The precise point insisted upon by counsel for the county is, that where any part of a public street or highway is washed out or otherwise destroyed by any means, and the damage is repaired by a new structure upon the portion thus destroyed

or rendered unfit for use, this gives the county a right to exact additional compensation from a railroad company which, previously to the injury, used the street or public highway with the assent of the municipality, where the railroad company proposes to make the same use of the street or highway after it has been repaired. We certainly know of no case which has carried the right of compensation for its use to this extent, and think that its recognition and enforcement by the courts would work great injury to the prosperity of the community."

An amendment to its charter, September 21, 1887 (Ga. Laws, 1887, p. 148), empowered the company to use dummy steam engines on the bridges subject to such regulations as the Board of Commissioners might prescribe from time to time. Extensions were also specially authorized with consent of the Board as to public roads and town authorities as to streets. Another amendment, November 12, 1889 (Ga. Laws, 1889, p. 696), prohibited the use of dummy engines or steam power on the bridges without unanimous consent of all the Commissioners declared by public resolution in an official meeting, and it provided, "that the Board of Commissioners of Roads and Revenues of Floyd county shall not have the right to grant any vested or contract rights to said Rome Street Railroad Company, or any other persons on or over said bridges, but may, in their discretion, grant temporary uses and privileges to said railroad company over 'said bridges, subject at all times to be revoked by said commissioners."

February 25, 1892, Floyd County, through its Board of Commissioners, and the Rome Street Railroad Company by formal writing agreed that, "Said party of the first part grants to the said party of the second part the right to lay and maintain a single track on one side of the County Bridges, at Rome, to-wit, . . . with the right to place electric wires and appliances and to run

electric cars across said bridges upon the consideration and conditions herein named"—among them payment of $100.00 annually for use of each bridge, and commencing to build electric lines within ninety days. Later, in 1892 or 1893, the car lines were equipped electrically and extended over and beyond all of the bridges, and since that time have been continuously operated. February 3, 1896, it was stipulated by the county and the City Electric Railway Company, a successor to the Rome Street Railroad Company and appellant's predecessor, "that said party of the first part grants to the said party of the second part the right to use its electric wires and appliances and to run electric cars across the Floyd County Bridges. . . . Said company shall pay annually to said party of the first part the sum of $200.00 for the use of said bridges in consideration of the grant herein named."

In *City Electric Railway Company* v. *Floyd County*, 115 Ga. 655, 657 (March Term, 1902), the state Supreme Court sustained the agreement of February 25, 1892. It said: "If the railroad company originally had the right, under the power granted to it by the legislature, as we are inclined to think it had, to construct and operate its electric lines over the bridges in question, without the consent of the county and without paying anything whatever therefor, it lost this right when the dispute between it and the county was compromised and settled by the execution of this contract. If there had been no controversy between the parties as to their respective rights in the matter, and the county had simply charged the railroad company one hundred dollars per annum for the use of each of the bridges, and the company had simply agreed to pay this sum annually, the contract entered into might have been, as contended by the plaintiff in error, a *nudum pactum*, and, therefore, not binding upon the company. But this was not the case; the parties asserted conflicting claims,

depending upon a question of law, and these claims were compromised and settled by the contract now under consideration."

An Act of the Georgia Legislature, approved August 15, 1914 (Ga. Laws, 1914, p. 271), provides:

That all right, title and interest in the Rome bridges together with complete jurisdiction and control over them shall be vested in Floyd County to be exercised by its authorities. All permits and franchises theretofore granted by State, county or city to any street railroad company to lay tracks or operate cars over any one of the bridges are revoked and repealed "so far as the same applies to any future bridges hereafter constructed under this or any other law, unless the said companies will conform to the reasonable terms and conditions required by the county authorities"; and Floyd County is authorized to condemn and remove existing bridges and construct new ones. The street railway company upon notice shall remove its tracks as may be required by the county authorities; the latter are given exclusive right and jurisdiction to grant franchises to operate over new bridges and to prescribe terms for such grants; and they are authorized to require as a condition precedent that any grantee shall pay to the county "one-third of the actual cost of the building of said bridges . . . but any corporation now having a franchise shall have the right to use any new bridge upon complying with the reasonable conditions imposed by the board of commissioners and the terms of this Act." The validity of any part of the act shall be contested only by injunction proceedings before the work of tearing down and removing the bridges is begun.

The Commissioners of Floyd County gave public notice, May 3, 1915, that on June 16th they would begin the work of tearing down old and rebuilding new bridges at an estimated total cost of $260,000.00. Ten days later

they passed resolutions wherein, after referring to the Act of August 15, 1914, and reciting their determination to remove the old bridges and erect others, they declared that appellant would be required to pay one-third of the actual cost of removing the old bridges and erecting new ones, "which sum shall be paid to the County Treasurer before said Company shall be allowed to place any tracks, wires, equipment or operate any cars on and over" the new structures.

By its original bill, filed May 26, 1915, in the United States District Court, appellant sought to enjoin defendants from undertaking to enforce the Act of 1914 according to their declared purpose upon the ground (a) that such action would deprive it of property without due process of law and of the equal protection of the laws, and impair the obligation of contracts with the State, contrary to the Constitution of the United States; (b) that when properly construed the Act of 1914 does not authorize defendants to require appellant to pay one-third of the cost of removing old bridges and constructing others, such charge being permitted only in the absence of a then existing franchise to cross the former.

Being of opinion that nothing in acts of the legislature, ordinances or resolutions gave appellant "any such vested interests, or such right to occupy and use these bridges" as it claimed, upon motion, the trial judge dismissed the bill. The judgment is correct and must be affirmed.

It is unnecessary now definitely to determine what rights were conferred by the Act of 1884. Under the agreements of 1892 and 1896 between appellant's predecessors and the Board of Commissioners the former accepted a temporary grant subject at all times to revocation—all the latter was empowered to make by the Act of 1889. This, we think, is clearly true and it is also but the logical result of what the Supreme Court of Georgia held in *City Electric Ry. Co.* v. *Floyd County, supra*. And

see *West End & Atlanta Street R. R. Co.* v. *Atlanta Street R. R. Co.*, 49 Georgia, 151, 158.

Considering the entire Act of 1914 we are unable to conclude that the legislature did not intend to authorize the county authorities. to require appellant to pay "a sum equal to one-third of the actual cost of the building of said bridges" before being allowed to use the same.

*Affirmed.*