## TECHNICAL RADIO LABORATORY v. FEDERAL RADIO COMMISSION.

Court of Appeals of District of Columbia.
Argued May 8, 1929. Decided
November 4, 1929.

No. 4035.

Godfrey L. Munter, of Washington, D. C., for appellant.

Bethuel M. Webster, Jr., Paul M. Segal, and Fanney Neyman, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal from a decision of the Federal Radio Commission refusing an application for a renewal of an existing station license. The appeal is brought under section 16 of the Radio Act of 1927, 44 Stat. 1162 (47, USCA § 96).

It appears that on December 18, 1926, a license was issued by the Secretary of Commerce under the Radio Act of August 13, 1912 (47 USCA §§ 51–60), authorizing the Technical Radio Laboratory to operate a broadcasting station at Midland Park, N. J., for a period of three months, with call letters WTRL, with a wave length of 283 meters (afterwards changed to 206 meters), and with maximum power of 15 watts. It was made a, condition of this license that the licensee should waive any right or claim of right, as against the United States, to any wave length or to the use of the ether in radio transmission because of previous license to use the same or because of the use thereof. This stipulation was required by a Joint Resolution of Congress, approved December 8, 1926, 44 Stat. 917 (47 USCA § 51a note). The license was renewed from time to time, subject to similar conditions, by the Federal Radio Commission under the Radio Act of 1927 (47 USCA §§ 81–119). The renewals were for periods of three months each, with a maximum power of 15 watts, and were continued until January 18, 1928. The station then filed an application for a renewal of the license; but the Commission failed to reach a determination that public interest, convenience, or necessity

would be served by such a renewal. Hearings were accordingly held pursuant to Section 11 of the Radio Act of 1927 (47 USCA § 91), but the application was finally refused. This appeal was then taken.

■ It is argued on behalf of the Commission that this appeal presents a moot question because of the fact that the Commission may not issue a license for a longer period than three months, and that, if the Commission had issued the renewal license which appellant applied for, such license would long since have expired according to its own terms. It is argued that, since the period for which the license might have been issued has expired, this appeal has become moot, and should be dismissed. We do not agree with this contention. Such an interpretation of the act would practically nullify the right of appeal granted by Congress in such cases, for it is rarely possible for a station to secure a decision upon such an appeal within three months after the right of appeal accrues. This fact was of course well known to Congress when the statute was enacted. Moreover the relief sought by an applicant for renewal is not limited to the issue of a license for three months only, but includes a continuing right to apply thereafter at proper times for successive renewals thereof. The statutory appeal accordingly contemplates the restoration to the appellant, if his claim be sustained, of the continuing right to make such application to the Commission as he would have enjoyed had his application first been allowed. We feel justified therefore in entertaining the appeal. Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310.

■ The appellant complains that it was not given lawful notice of the charges made against the station, nor of the time and place of the hearings to be held by the Commission. This complaint is answered by the fact that appellant actually appeared by counsel at all of the hearings, and submitted evidence and otherwise participated therein.

■ Appellant contends that the decision of the Commission is null and void, for the reason, as alleged, that the statute requires all of the five commissioners to participate in such hearings and decisions, whereas in this case one of the commissioners failed to take any part in the proceedings. This objection is met by the fact that the absent commissioner was charged with prejudice by appellant, and thereupon retired from the hearings with appellant's express consent and approval. The remaining four commissioners were law-fully empowered to proceed with the hearings and enter a decision in the case. See 32 Cyc. 1407, title "Quorum." Moreover, appellant cannot be heard in this court to challenge proceedings which were taken by the Commission with appellant's consent.

Appellant charges the entire Commission with prejudice, and alleges that the Commission "started a newspaper campaign" against it almost 30 days before the hearing. The record shows that these charges are without foundation.

■■ At the hearing before the Commission testimony was tendered both for and against the station in the form of voluntary, unverified written statements of persons not called as witnesses, and also of merely verbal statements of like persons made in the presence of Government officials, all relative to the service or lack of service rendered to the public by the station. The Commission ruled that such statements, whether written or oral, would not be accepted as evidence of the facts stated therein. We find no error in this ruling. On the other hand, we think that the Commission has the authority, under reasonable regulations, to depart from the strict jury trial rules of evidence which are applicable to court proceedings. See 1 Wigmore on Evidence, § 4a.

■ Appellant also contends that the Commission lacked constitutional authority "to order the station off the air," and that its refusal to renew the station's license amounts to a taking of property without compensation, and without due process of law.

We cannot agree with this contention. Under the commerce clause of the Constitution (article 1, § 8, cl. 3), Congress has power to regulate interstate commerce, and radio communication in general falls within this classification. Whitehurst v. Grimes (D. C.) 21 F.(2d) 787; 35 Op. Attys. Gen. 126; White v. Federal Radio Commission (D. C.) 29 F.(2d) 113; United States v. Am. Bond & Mtg. Co. (D. C.) 31 F.(2d) 448; Davis, Law of Radio Communication, p. 29. It may be questioned whether radio broadcasting can in any case be so restricted in practice as to be wholly intrastate in character. It is clear, however, that the broadcasting service of WTRL cannot be exclusively intrastate, for its location is such that its electric waves may cross state lines, and may also interfere with the reception of radio communications from other states. The present application filed by the station for a federal broadcasting license is an implied admission of this fact.

■ In the Radio Act of 1927 (section 11) Congress invested the Federal Radio Commis-

sion with authority to examine applications for station licenses, or for the renewal or modification of such licenses, and to grant or refuse the same as the public interest, convenience, or necessity may require. A hearing upon notice and an appeal to this court are allowed in case of a refusal. The validity of such a refusal may also finally be tried upon proper issues in other forums. The appellant therefore is not denied due process of law.

Moreover, under the Radio Act of 1927, the only property right which was acquired by appellant in the use of the ether as a medium of communication was such as was granted to it by the terms of its license, and was subject to the conditions contained therein relative to power, frequency, the time for which the license was granted, and also the provisions governing the renewal thereof. It may be added that the authority of Congress to regulate radio communication as a species of interstate commerce necessarily implies the right of reasonable regulation to control in the public interest the number, location, and activities of the broadcasting stations of the country as an integral system, and such control must necessarily at times involve the right of reasonable restriction and pro tanto prohibition. Davis, Law of Radio Communication, 71.

Appellant also contends that the decision of the Commission is contrary to the evidence, and that it is manifest from the testimony that station WTRL "served public interest, convenience and necessity of Bergen County, New Jersey."

On this issue the burden is upon appellant, and this court should sustain the Commission's findings of fact unless they are shown by the record to be manifestly against the evidence.

It appears that Midland Park is located in Bergen county, N. J., at a distance less than 50 miles from the various broadcasting stations at or near the city of New York. It also appears that station WTRL is limited by the terms of its license to a power of 15 watts and a wave length of 206 meters. It is manifest from the record that due to the station's power and inadequate wave length, and the lack of care and attention given to it, the station has been of no actual benefit to its owners or to the community of Bergen county. This fact is substantially conceded in the testimony introduced by appellants.

In its application for a renewal of its license filed January 14, 1928, the following statement appears: "It of course is understood that when our wave length is raised and our power increased this station will operate every minute of the evening and day as it is impossible to have a full program on the wave length and the amount of power now used by the station." At one of the hearings the president of the company was asked: "How many hours a week would you say the station has been operated?" He answered: "It is pretty hard for me to answer. I might say this. This station we have not tried to put on the air on what you might call a regular commercial basis. In the first place, the station is over in Midland Park, New Jersey, at a point where it would be impossible to bring talent into that community at any regular intervals, because it is off the main thoroughfare. That is the reason that about two years ago, as your records will show, we asked for an increase in power at that time, and you may have later had some additional requests. We wanted to move the station to a more advantageous point where it could be used on a regular commercial basis. We have operated the station regularly. We have given programs. They surely do not compare with WEAF; I do not make any such claim because you cannot do it on 15 watts." It is also stated by one of appellant's witnesses that it is impossible to have a full program or "remote control broadcasting" upon the wave length and power allotted to the station. The following statement was made at the hearings by Mr. D. W. May, one of the owners of the station, who is said to be one of the largest distributors of radio receiving sets in the country, having over 1,000 dealers in the state of New Jersey, with this station as a subsidiary: "We plan and are financially and otherwise able to operate a 500 watt station on a non-commercial basis for the benefit of the owners of receiving sets and the radio public in general in this vicinity. We have worked out plans with the radio trade in New Jersey for our mutual co-operation whereby each dealer will have the privilege of the use of the station without charge of said dealer except the cost of talent, for the purpose of establishing closer contacts between said radio trade and the public which use the receiving sets and improving programs and increasing the number of receiving sets in use, to the mutual advantage of the trade and the public."

The witness added that: "He has not worked out this plan with the present station because its wattage is so low that it can scarcely be heard outside of the town, and has been waiting on the Commission to grant increase of power and better wave length so that the station may have some usefulness."

The material equipment of the station at present is meager. The parlor of the manager's home is used as a "studio"; the broadcasting apparatus is located in an adjacent shed used formerly as a barn; the antenna is a wire fastened to a pole nailed upon the shed. The station has rarely been on the air, and its programs have been almost entirely limited to phonograph reproductions. So irregular have been these efforts that the Radio Supervisor of the Department of Commerce, who had supervision over this district, and one of whose duties it was to make a check of broadcasting stations in his district in order to determine whether or not they were operating within the limits set by the Commission, was unable to discover this station on the air during the full year preceding the hearing.

One of the owners of the station testified: "We estimate the cost of this station, its equipment, operating fees and expenses, legal fees, etc., to be about $10,000.00, and the broadcasting license is an absolutely essential and necessary right, without which this station and the moneys which we have put in it is an irreparable loss." This latter statement is not sustained by the record. Nor will a renewal of the present license add any value to the outfit. The real substantial object sought by appellant in this controversy is not to secure a renewal of the present license but a modification of its terms, whereby the station will be allowed greater power and a better wave length, with a right of removal to some other location. That question however is not now before this court, and cannot be decided upon the present record. In the case actually before us we must hold that the Commission was justified in its decision that a renewal of the present station's license would not serve the public interest, convenience, or necessity, and its decision to that effect is affirmed with costs, including the cost of printing.