**STATION WBT, Inc., v. POULNOT, Sheriff, et al.**

No. 509.

District Court, E. D. South Carolina.

Jan. 17, 1931.

672

George L. Buist, of Charleston, S. C. (Buist & Buist, of Charleston, S. C., and John W. Van Allen, of Buffalo, N. Y., on the brief), for plaintiff.

Cordie Page, Asst. Atty. Gen., and J. Fraser Lyon, of Columbia, S. C. (John M. Daniel, Atty. Gen., on the brief), for defendants.

Before PARKER, Circuit Judge, and COCHRAN and GLENN, District Judges.

ERNEST F. COCHRAN, District Judge.

The plaintiff brought suit to enjoin the defendants from enforcing collection of taxes on radio sets under the provisions of the Act of the Legislature of South Carolina of March 31, 1930 (36 St. at Large, p. 1292). An application has been made for an interlocutory injunction before a court of three judges, in accordance with the provisions of section 266, Judicial Code (U. S. Code, title 28, § 380 [28 USCA § 380]). The facts as developed at the hearing of the application are substantially as follows:

The plaintiff is a corporation under the laws of the state of New York; has its principal place of business at Charlotte, N. C.; and owns and operates a radio broadcasting station at Charlotte under license of the Federal Radio Commission. The defendants are all residents and citizens of South Carolina. Plaintiff's plant or operating system is roughly valued at about $100,000. It has a "normal audience" embraced within a circle determined by a radius of 200 miles from the city of Charlotte that includes practically all of the state of South Carolina. Its gross annual income is about $125,000, primarily from advertisers. Of this about $5,000 is from advertisers seeking to reach a South Carolina audience exclusively. About $105,-000 is from advertisers seeking to reach the entire "normal audience," including the South Carolina audience; and about $15,000 is from advertisers seeking to reach an audience exclusive of South Carolina. Approximately one-third of its "normal audience" is in South Carolina. The value of the right to communicate with the South Carolina portion of its audience is placed by the plaintiff at $50,000. There are more than 50,000 radio receiving sets in South Carolina in actual use and operation.

The proofs show that the art of radio broadcasting consists in transmitting electromagnetic waves set in motion by electricity at a station and passing through space to numerous receiving instruments. The essential elements in such communications consist of the transmitter, the connecting medium or "ether," and the receiving mechanism. The electro-magnetic waves move at the speed of light, and it is impracticable to confine them, at least in the present state of the art, within state lines. The receiving mechanism or receiving set detects the on-coming radio waves, and amplifies them into audible sound. All radio communication, anywhere in the United States, travels actually or potentially across state lines, and even if certain radio electric wave energy, through an accident or otherwise, should lose its force before crossing the state line, yet it potentially interferes with other radio communication passing interstate. Congress has, assumed control of all communications by radio, acting through the Federal Radio Commission, which actively and continuously supervises all such communication. The South Carolina Radio Tax Act was approved March 31, 1930, and took effect immediately upon its approval. For several months the Tax Commission made no serious effort to enforce the tax, merely receiving such payments as were voluntarily made, without molesting those persons who elected to stand on their constitutional rights, or who otherwise failed or refused to pay the tax. But the commission then determined upon a policy of drastically enforcing the act and putting into effect the penalizing provisions; and thereupon the plaintiff brought this suit, alleging that the tax imposed by the act was a burden upon interstate commerce and in conflict with the Constitution of the United States. The act provides that for the privilege of owning or operating a radio receiving set, an annual license tax ranging from one dollar to two dollars and a half, varying with the value of the set, shall be paid. Every person who fails or refuses to make the return or to pay the tax required by the act is subject to a penalty of $50. The taxes imposed are made a first preferred lien upon every receiving set and the commission is authorized to issue execution, under which the set may be levied upon and sold in the manner provided for delinquent taxes. All persons engaged in the sale, barter, or exchange of radio receiving sets are required to keep a record thereof, and for failure to keep such record are subject to a penalty of not more than $100 or imprisonment of not more than

thirty days. The act provides that the proceeds of the taxes and penalties shall be used for the buildings, equipment, and permanent improvement of the State Tuberculosis Sanatorium. The act makes no provision for the recovery of the taxes upon payment thereof, nor is there any other provision of South Carolina law which authorizes a recovery.

The first question is whether this court has jurisdiction of the cause. There exists diversity of citizenship and the case also arises under the Constitution of the United States. The only question therefore is whether the amount in controversy exceeds $3,000.

The bill seeks an injunction to protect the right of the plaintiff to engage in interstate commerce without unlawful interference. That right is the subject of the controversy. In such cases, the jurisdictional amount is not to be tested by the mere immediate pecuniary damage resulting from the acts complained of, but by the value of the business to be protected, and the wrong to the property rights which the complainant seeks to have recognized and enforced. Hunt v. New York Cotton Exchange, 205 U. S. 322, 27 S. Ct. 529, 51 L. Ed. 821; Bitterman v. L. & N. R. Co., 207 U. S. 205, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Berryman v. Whitman College, 222 U. S. 334, 32 S. Ct. 147, 56 L. Ed. 225; Glenwood, etc., Co. v. Mutual, etc., Co., 239 U. S. 121, 36 S. Ct. 30, 60 L. Ed. 174; Western & A. R. Co. v. R. Comn. of Ga., 261 U. S. 264, 43 S. Ct. 252, 67 L. Ed. 645; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596. Cf. Scott v. Donald, 165 U. S. 107, 17 S. Ct. 262, 41 L. Ed. 648.

When we consider the value of the plaintiff's plant, its gross annual income, the ratio of its South Carolina audience to its "normal audience," and the amount received from advertisers seeking to reach the South Carolina audience exclusively, we have no difficulty in reaching the conclusion that the value of the plaintiff's right to communicate with the South Carolina portion of its audience is in excess of $3,000. Cf. Berryman v. Whitman College, supra. See, also, the other decisions cited above.

The next question is whether the plaintiff has any standing to attack the constitutionality of the act in question. No tax is laid upon the plaintiff or upon its business or any property owned by it. The tax is laid upon receiving sets owned by the various persons who compose a part of plaintiff's audience, and who may be in a sense styled the plaintiff's customers. It is true that the constitutionality of an act cannot be assailed by one who is not directly affected by the act; and, as a general rule, no person in any business has such an interest in possible customers as to enable him to restrain the exercise of proper power of the state upon the ground that he will be deprived of patronage. But there are numerous decisions of the Supreme Court which lead, in our opinion, inevitably to the conclusion that the plaintiff may maintain its action if the tax in question is found to be unconstitutional.

Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, arose under the Federal Child Labor law. Congress, under its power to regulate interstate commerce, undertook to forbid the shipment in interstate commerce of the products of child labor. The bill was filed by a father in his own behalf, and as next friend of two minor sons, employees in a cotton mill. The Supreme Court held that the act was unconstitutional, and affirmed the decree of the District Court enjoining its enforcement. It is true that in that case the point whether the plaintiffs were in position to attack the law was not directly decided or considered. But it is hardly likely that the Supreme Court would have decided a law unconstitutional without considering the question of the right of the plaintiffs to attack it, if there was any serious doubt about such right. The case is therefore very persuasive for the view that they did have the right. Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724.

Pierce v. Society of the Sisters, 268 U. S. 510, 45 S. Ct. 571, 69 L. Ed. 1070, 39 A. L. R. 468, arose under the Oregon Compulsory Education Act, which, with certain exemptions, required every parent, etc., to send children of certain ages to the public schools. The plaintiffs in those cases were corporations engaged in education, with property rights and interests which were threatened by the enforcement of the act. The Supreme Court held that the act was unconstitutional and that the plaintiffs' business and property were threatened with destruction through the unwarranted compulsion which was exercised by the state authorities over the present and prospective patrons of their schools; and their rights would be protected by injunction. Pierce v. Society of the Sisters, 268 U. S. 510, 45 S. Ct. 571, 69 L. Ed. 1070, 39 A. L. R. 468.

Buchanan v. Warley, 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201, involved an ordinance forbidding colored persons to occupy houses in a block occupied in the major portion by whites. A white man contracted with a colored man to sell him property within the inhibited zone, with a clause relieving the purchaser if it should prove illegal to occupy the property. The white man sued to enforce the contract, claiming that the ordinance was unconstitutional. Objection was made that the denial of the constitutional right involved only the rights of colored persons; but the Supreme Court held that the property rights of the white man were directly and necessarily involved, and the ordinance was declared unconstitutional. Buchanan v. Warley, 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201.

In Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 9, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, there was involved the constitutionality of an act of Arizona prohibiting the employment of more than a certain percentage of aliens by any employer employing five or more persons. The plaintiff was informed by his employer that by reason of the requirements of the law and because of the fear of the penalties which would be incurred in case of its violation, he would discharge him from service upon the law going into effect; and for that reason, alone, his services being perfectly satisfactory. The alien brought an action against the state officers to restrain the enforcement of the statute, joining his employer as a party defendant. It was urged that the defendant could not sue, save to redress his own grievances; that the servant could not complain for the master; and that it was the master who was subject to prosecution and not the plaintiff. The Supreme Court said, however:

"The act undertakes to operate directly upon the employment of aliens, and if enforced would compel the employer to discharge a sufficient number of his employees to bring the alien quota within the prescribed limit. It sufficiently appears that the discharge of the complainant will be solely for the purpose of meeting the requirements of the act and avoiding threatened prosecution under its provisions. It is, therefore, idle to call the injury indirect or remote. It is also entirely clear that unless the enforcement of the act is restrained the complainant will have no adequate remedy, and hence we think that the case falls within the class in which, if the unconstitutionality of the act is shown, equitable relief may be had."

The court therefore held that the plaintiff could maintain an action and sustained his contention that the act was unconstitutional. Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283.

In Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182, the plaintiff manufactured in Minnesota certain products which he sold and shipped to retailers in Indiana, where the product was sold by them in the original package. A statute of Indiana required of every person selling or offering such products for sale in that state to file certain statements and certificates; that there should be affixed to every package a label of the contents, etc., with penalties for noncompliance. The plaintiff brought his suit against the state officers to enjoin them from prosecuting the persons selling his products. The position was taken that the plaintiff showed no ground of equitable relief, as no action was threatened against him. The statute was held constitutional, but the right of the plaintiff as having a standing in the court of equity was sustained. The court held that the sale and shipment by plaintiff to his purchasers in Indiana constituted interstate commerce in the freedom of which from any unconstitutional burden he had a direct interest, and that the protection accorded to this commerce by the federal Constitution extended to the sale by the receiver of the goods in the original packages; and that an attack upon this right of the importing purchasers to sell in the original packages bought from the plaintiff not only would be to their prejudice, but inevitably would inflict injury upon the plaintiff by reducing his interstate sales; a result to be avoided only by compliance with the act by filing the statement and affixing the labels it requires. The court concluded that the plaintiff was entitled to relief against enforcement, if the demands were illegal. Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182.

We have been unable to distinguish the case at bar in principle from the cases cited. Here the plaintiff was engaged in interstate commerce. The value of its business is impaired, and if the amount of the tax should be increased, may be destroyed, by unlawful exactions made upon the owners of radio receiving sets. The power to tax is the power to destroy. If the state can lay a small tax, it can lay a tax which would be prohibitive. The direct and necessary result of the impo-

sition of the tax in question is to impair the value of the plaintiff's business and a heavier tax might destroy it entirely. We are constrained to hold therefore that the plaintiff's property rights are directly affected by the tax in question, and it has a standing in a court of equity to protect its rights.

It has not been contended that the plaintiff has any adequate remedy at law. It is perfectly apparent that no matter how much the tax may impair the plaintiff's property rights, or even if its business should be utterly destroyed, it would have no remedy at law for damages or otherwise. The law makes no provision by which any one can pay the tax and recover it. But even if it did provide that the owner might pay the tax and recover it, nevertheless it would be utterly impracticable for the plaintiff to arrange with the various owners of more than 50,000 radio sets and pay the tax for them. Such a course would involve such a multiplicity of suits and be so enormously expensive as to be practically prohibitive. But it is unnecessary to pursue this branch of the subject any further. There is no remedy at law provided for any person whose rights may be violated by this act.

■ There can be no doubt that communications by radio constitute interstate commerce. It has been so held by numerous courts, and the decisions of the Supreme Court of the United States defining interstate commerce necessarily lead to that conclusion. Gibbons v. Ogden, 9 Wheat. 1, 189, 6 L. Ed. 23; Pensacola Tel. Co. v. Western Union Teleg. Co., 96 U. S. 1, 24 L. Ed. 708; Blumenstock Bros. Adv. Agency v. Curtis Pub. Co., 252 U. S. 436, 40 S. Ct. 385, 64 L. Ed. 649; Western Union Tel. Co. v. Speight, 254 U. S. 17, 41 S. Ct. 11, 65 L. Ed. 104; Whitehurst v. Grimes (D. C.) 21 F.(2d) 787; General Electric Co. v. Federal Radio Comn., 58 App. D. C. 386, 31 F.(2d) 630; U. S. v. American Bond, etc., Co. (D. C.) 31 F.(2d) 448, 454; Technical Radio Laboratory v. Federal Radio Comm., 59 App. D. C. 125, 36 F.(2d) 111, 66 A. L. R. 1355; City of New York v. Federal Radio Comm., 59 App. D. C. 129, 36 F.(2d) 115.

■ The plaintiff contends that all radio communication is necessarily interstate, and in the present state of the art, this appears to be correct. However, it is not inconceivable that radio communication may in the future be so perfected that it may be confined strictly intrastate; but we do not consider it necessary to make any ruling upon that point now. Certainly under the facts of the pres-

ent case, the plaintiff, through its broadcasting plant, is engaged in interstate commerce. The receiving sets in South Carolina are essential to the reception of the communications by the South Carolina audience. In other words, the receiving sets are absolutely essential instrumentalities of the interstate commerce in which the plaintiff is engaged.

■ The only question remaining is whether the state has the right to lay a tax upon these instruments of interstate commerce. Under the numerous decisions of the Supreme Court there can be only one answer. Those decisions hold that Congress has the power to regulate interstate commerce; that that power is necessarily exclusive whenever the subjects are national in their character or admit only of one uniform system or plan of regulation; and that where the power of Congress to regulate is exclusive, the failure to regulate indicates the will that it shall be left free from any restrictions or impositions; and any regulation of the subject by a state, except in matters of local concern, is repugnant to such freedom, and that no state can compel a party, individual, or corporation to pay for the privilege of engaging in interstate commerce, and that a state has no power to lay any burden in any form, by taxation or otherwise, upon interstate commerce or its instrumentalities. Robbins v. Taxing Dist. of Shelby County, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694; Lyng v. Michigan, 135 U. S. 161, 10 S. Ct. 725, 34 L. Ed. 150; Crutcher v. Kentucky, 141 U. S. 47, 11 S. Ct. 851, 35 L. Ed. 649; Atlantic & P. Tel. Co. v. Philadelphia, 190 U. S. 160, 23 S. Ct. 817, 47 L. Ed. 995; Minnesota Rate Case 1913, 230 U. S. 352, 396, 397, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Barrett v. State of New York, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483; City of Sault Ste. Marie v. International Transit Co., 234 U. S. 333, 34 S. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574; Lemke v. Farmers, etc., Co., 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed. 458; Real Silk Hosiery Mills v. Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982.

The tax in question cannot be sustained under those cases which hold that the state has a right to impose an *ordinary* property tax upon property having a situs within its territory and employed in interstate commerce; for here the tax is not a general property tax, but a license tax for the privilege of using an instrument of interstate commerce. Nor can it be sustained as a matter of local regulation, for the subject is national, and admits only of one uniform sys-

tem or plan of regulation. Nor can it be sustained as a police regulation with an incidental tax to pay the expenses of the regulation, for it has no elements of police, and, moreover, the tax is frankly devoted to the uses of a state institution. Nor can it be sustained as in aid of interstate commerce, nor on the ground that its effect is merely incidental. The tax here is directly laid upon a necessary instrument of interstate commerce, imposes a burden upon that commerce, and the act of the Legislature imposing it is therefore in conflict with the Constitution of the United States, and null and void.

Interlocutory injunction granted.

District Court, E. D. South Carolina.

Jan. 17, 1931.

George L. Buist, of Charleston, S. C. (Buist & Buist, of Charleston, S. C., and John W. Van Allen, of Buffalo, N. Y., on the brief), for plaintiff.

Cordie Page, Asst. Atty. Gen., and J. Fraser Lyon, of Columbia, S. C. (John M. Daniel, Atty. Gen., on the brief), for defendants.

Before PARKER, Circuit Judge, and COCHRAN and GLENN, District Judges.