**AMERICAN BOND & MORTGAGE CO. et al.
v. UNITED STATES.**

No. 4291.

Circuit Court of Appeals, Seventh Circuit.
July 9, 1931.

As Modified on Denial of Rehearing Oct. 12, 1931.

George W. Swain, Frank H. Scott, and Edward B. Hayes, all of Chicago, Ill., for appellants.

George E. Q. Johnson, U. S. Atty., of Chicago, Ill., John Lord O'Brien, Asst. to Atty. Gen., and Charles H. Weston and William G. Davis, Sp. Assts. to Atty. Gen., for the United States.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Appellee brought this suit to enjoin the continued operation of a radio broadcasting station (WMBB-WOK), which was being operated by appellants after the Federal Radio Commission had refused their application for a renewal of license. The District Court granted the injunction, and this appeal followed.

When this appeal was first presented to this court, it appeared to us and to counsel that there were certain questions or propositions of law concerning which instructions from the Supreme Court were desirable, and we accordingly certified such questions or propositions to the Supreme Court, under the supposed authority of section 346, tit. 28, US CA.[1] But the Supreme Court concluded that the questions certified need not be answered, and dismissed the certificate. American Bond & Mortgage Co. et al., 282 U. S. 374, 51 S. Ct. 118, 75 L. Ed. 395.

Upon the second presentation of this appeal to this court, appellants narrowed their previous contentions by not pressing their attack upon the constitutionality of the Federal Radio Act, but contended that the order of the Radio Commission refusing to extend the license under which they had previously operated, was arbitrary, unreasonable, and unfair. This attack is predicated upon the following established facts:

Appellant American Bond & Mortgage Company, an Illinois corporation, was engaged in selling securities throughout the United States. Appellant Trianon, Inc., an Illinois corporation, operated for profit a public ballroom in Chicago. These two corporations conducted this broadcasting station, using the same transmitter and dividing the expense of operation. The station was located at Homewood, Ill., about 25 miles from the city of Chicago.

Broadcasting at this station dated back to a period before the passage of the first Federal Radio Act. After the creation of the Radio Commission, licenses were granted and renewed to conduct the broadcasting station at the aforementioned place, and in August, 1927, the Commission issued a construction permit for the construction of a new transmitter at Homewood, and upon its completion, issued a license authorizing full time operation on a frequency of 1190 kcs. with 5,000 watt power. This license was renewed from time to time until it expired September 1, 1928. In May, 1928, the Commission entered a general order to the effect that it would hear all applications for renewals of licenses or permits for conducting broadcasting stations July 9, 1928, and notified the appellants, as well as all other applicants, that unless a showing was made that public interest,

---

[1] "In any case, civil or criminal, in a circuit court of appeals, or in the Court of Appeals of the District of Columbia, the court at any time may certify to the Supreme Court of the United States any questions or propositions of law concerning which instructions are desired for the proper decision of the cause; and thereupon the Supreme Court may either give binding instructions on the questions and propositions certified or may require that the entire record in the cause be sent up for its consideration, and thereupon shall decide the whole matter in controversy in the same manner as if it had been brought there by writ of error or appeal."

convenience, or necessity would be served by renewing the licenses, they would be denied. The hearing was had, and the Commission denied appellants' application, the order to be effective September 1, 1928.

The Commission set forth its reasons for adopting this order, stating that it was acting in compliance with the equalization requirements of section 5 of the amendatory Act of March 28, 1928 (47 USCA § 89); that such action would promote the public interest and convenience; that it would greatly improve receptive conditions in the broadcasting band by the elimination of a part of the interference which then existed.

Appellants showed that large sums of money (over $100,000) had been expended by them in building their station and in developing their business, and that the benefit of this expenditure would be wholly lost if the order of the Commission were not reversed. They likewise showed that no objection had been made to the manner in which they had conducted their station, and that the only reason for the order of discontinuance was the necessity of reducing the number of broadcasting stations in order that the radio users might secure the maximum enjoyment through lessened interference. It also appeared that public convenience necessitated the regulation of broadcasting stations and the only practical way of eliminating interference was to reduce the number of broadcasting stations.

Without going into the details of the evidence, it may be said that the proof showed that the congressional act was to secure a more even geographical distribution of broadcasting stations and the elimination of trouble, so annoying to the radio users, which arose through interference. It appeared that a 5,000 watt power broadcasting station has a radius of area of good service to suburban dwellers of approximately 100 miles and a radius of area of fair service to rural listeners of approximately 1,000 miles; that a station of such power, however, interfered with another station broadcasting on a similar wave length 3,000 miles away.

Appellants do not now question the necessity of regulation nor the propriety of limiting broadcasting stations in such manner as to give the best service to the possessors and users of radios. Their contention, however, is that the Commission acted arbitrarily when it denied appellants' permit without providing any compensation for the loss of property, which such order of discontinuance necessarily entailed. Their position,

briefly stated, is that in denying a renewal of license to one broadcasting station, which had not offended against the rules of the Commission, solely to reduce the number of such stations, the Commission should have required the other broadcasting stations to pay a fair sum to appellants to compensate them for their loss. They contended that if other licensees did not care to continue upon the condition that they pay appellants for their loss, appellants should have been permitted to continue upon the condition that they pay their proportion of the loss which some other licensee suffered through the loss of its license.

While there seems much of merit in this position, appellee contends that appellants are in no position to make this contention in this suit at this time because of their failure to appeal to the Court of Appeals of the District of Columbia, as provided by section 16 of the Radio Act of 1927, U. S. Code Supplement, title 47, § 96 (47 USCA § 96). Appellee also contends that the license, under which appellants operated, ran for a limited period only; that no vested rights were acquired thereunder, and, therefore, the order of the Commission was valid and appellants were entitled to no compensation for the loss of their property. Technical Radio Laboratory v. Federal Radio Commission, 59 App. D. C. 125, 36 F.(2d) 111, 66 A. L. R. 1355.

We are well satisfied that there is a vital difference between the rights of one whose property (in coal land such as was considered in Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322) is confiscated by judicial decree and the rights of one to the use of the air, which right is dependent upon a government permit limited both as to extent and time. The former is vested. The latter is permissive.

We are likewise satisfied that appellants are not in a position to attack an order of the Radio Commission which was within its power to make, without first exhausting the remedies given them by the Radio Act, to wit, by appealing to the Court of Appeals of the District of Columbia.

The view of the Supreme Court on this proposition is clearly indicated in White v. Johnson, 282 U. S. 367, 51 S. Ct. 115, 118, 75 L. Ed. 388, a case similar to the one under consideration, in which similar questions were at the same time certified to the Supreme Court, and in which the certificate was likewise dismissed. But respecting redress against unjust and arbitrary action of

the Commission, the court employed the language quoted in the margin.[2]

Other authorities, holding that one cannot attack an order such as is here under review without availing himself of all of the remedies provided by the statute for the correction or the modification of the order, are: Gorham Manufacturing Co. v. State Tax Commission of New York, 266 U. S. 265, 269, 45 S. Ct. 80, 69 L. Ed. 279; First National Bank v. Board of Com'rs of Weld County, 264 U. S. 450, 453, 44 S. Ct. 385, 68 L. Ed. 784.

The decree is affirmed.

### On Rehearing.

Appellants' attack on the constitutionality of the Radio Act 1927 (47 USCA § 81 et seq.) was not considered in the opinion which disposed of this appeal, because we labored under the impression that counsel on oral argument expressly waived the assignments of error which presented this question. Counsel assure us they neither intended to, nor did, waive these assignments of error, and we unhesitatingly and without question accept their statement of their position. Their brief covered the question, and it was the principal question argued therein. We are glad of the opportunity of correcting, upon this petition for rehearing, what was seemingly our misunderstanding.

Appellants argue that the construction of their broadcasting station with its attendant large expenditure of money and its use antedating the enactment of the Radio Act created property rights in the owners or lessees of the station, which Congress was powerless to confiscate without just compensation.

At the threshold of our consideration of this question, we are met by the fact that, after the passage of the act assailed, appellants, to secure some of the benefits which followed the federal regulation of broadcasting stations, voluntarily made application for a permit to conduct a station and accepted a revocable and limited license with the conditions and limitations clearly set forth. The permit, as well as sections of the statutes referred to therein, is also set forth.[3] Such conditions and time limitations restricted appellants' property rights, as well as its broadcasting privileges. Having sought and secured a government permit or license with its attendant benefits, appellants obviously cannot later assert rights which were surrendered in order to secure the permit. Rome Ry. & Light Co. v. Floyd County, 243 U. S. 257, 37 S. Ct. 291, 61 L. Ed. 706.

We find the legal proposition which is the basis of this conclusion stated in Cooley on Constitutional Limitations (8th Ed.) vol. I, p. 369, as follows: "So a person who obtains a license under a law, and seeks for a time to enjoy the benefits thereof, can not afterwards, and when the license is sought to be revoked, question the constitutionality of the act." See also Cofman v. Ousterhous, 40 N. D. 390, 168 N. W. 826, 18 A. L. R. 219; Frost v. Corporation Commission, 278 U. S. 515, 527, 49 S. Ct. 235, 73 L. Ed. 483; Buck

---

[2] "* * * We have above called attention to the provisions of the Radio Act which give redress against arbitrary or unjust action by the Commission. We repeat that the appellant did not see fit to avail himself of the right of appeal thereby conferred, but on the contrary chose to violate the Commission's order and to stand on an alleged constitutional right which he says the action of the Commission infringed. It would be subversive of all established principles were courts, in litigations between parties, who have reciprocal rights under the Constitution, to settle their controversies by broad statements to the effect that acts of Congress are unconstitutional upon their face; and this not only in ignorance of the circumstances and manner of the application of the statute by the administrative body, but with knowledge that the party complaining had failed to pursue the remedy provided by law."

[3] Provisions of License

"* * * American Bond and Mortgage Company is hereby authorized to use and operate the radio apparatus * * * for the term ending December 31, 1927, unless this license is sooner suspended or revoked.

"This license shall not vest in the licensee any right to operate in the use of frequencies or wave lengths specified herein, beyond the terms hereof, nor in any other manner nor at any other time or place than authorized herein * * * this license is expressly subject in terms to the right of use or control conferred by Section 6, of the Radio Act. * * *

"As one of the conditions of this license, the licensee is required during the term of this license to render adequate service of the character above specified during the authorized time of operation and a violation of this condition will be considered a ground for the suspension or revocation of this license.

"This license is issued under and in accordance with the Radio Act of 1927, and all of the terms and conditions thereof are made a part hereof as though specifically set out in full herein. * * *"

Provisions of Statute (47 USCA)

"Sec. 81. * * * No * * * corporation shall use or operate any apparatus for the transmission of energy or communications * * * by radio * * * except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter."

"Sec. 85. * * * No station license shall be granted by the commission * * * until the applicant therefor shall have signed a waiver of any claim to the use of any particular frequency or wave length or of the ether as against the regulatory power of the United States because of the previous use of the same, whether by license or otherwise."

"Sec. 91. * * * The station license shall not vest in the licensee any right to operate the station nor any right in the use of the frequencies or wave length designated in the license beyond the term thereof nor in any other manner than authorized therein. * * *"

322

v. Kuykendall, 267 U. S. 307, 316, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Hurley v. Commission of Fisheries, 257 U. S. 223, 225, 42 S. Ct. 83, 66 L. Ed. 206; St. Louis, etc., Co. v. Prendergast Const. Co., 260 U. S. 469, 472, 43 S. Ct. 178, 67 L. Ed. 351.

■ Moreover, we would be compelled to reach the same conclusion even though appellants had not limited or narrowed their asserted rights by applying for and accepting a limited license or permit. For it has been held by the various courts, that have passed upon the question, that the regulation of broadcasting stations is within the expressly delegated power of Congress to regulate interstate commerce. KFKB Broadcasting Ass'n v. Federal Radio Commission, 60 App. D. C. 79, 47 F.(2d) 670; City of New York v. Federal Radio Commission, 59 App. D. C. 129, 36 F.(2d) 115; General Electric Co. v. Federal Radio Commission, 58 App. D. C. 386, 31 F.(2d) 630; Station WBT v. Poulnot (D. C.) 46 F.(2d) 671. See, also, International Text-Book Co. v. Pigg, 217 U. S. 91, 30 S. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103; W. U. Telegraph Co. v. Pendleton, 122 U. S. 347, 7 S. Ct. 1126, 30 L. Ed. 1187. In the absence of a single authority holding to the contrary and in view of the reasons set forth as the basis of the above decision, we, too, reach the same conclusion.

Whether Congress was acting within its power to regulate the radio broadcasting stations by ordering certain stations off the air presents, of course, a closer question, which can only be solved by an examination of the facts to ascertain the reasonableness of the Commission's order.

■ The purpose of federal regulation of radio broadcasting stations was obvious. The confusion which resulted from the uncontrolled operation of such stations was ruinous to all commercial enterprises engaged therein, as well as destructive of the benefit which the public enjoyed as a result of the development of the radio industry. There was but one effective method of regulation, to wit, through licensing of stations and the limiting of their use to specific wave lengths and to certain kilowatt power. Such regulation necessarily contemplated a reduction of the number of broadcasting stations, or a limitation of hours a station could broadcast, or the lessening of the area (through reduction of power) through which the wave lengths traveled. If Congress under the Commerce Clause of the Constitution had the power to regulate this subject, it surely could exercise its power in the only manner which would accomplish the desired end, which was through the elimination of a plurality of broadcasting stations operating on the same wave length in the same territory at the same time. Every investment in broadcasting stations was subject to this exercise of reasonable and necessary regulation by Congress. As against such possible regulation there existed no vested right in favor of the investors.

The petition for rehearing is denied.