**Werner Goers, d/b/a Goers Motor Sales, Plaintiff-Appellant, v. Charles F. Carpentier, Secretary of State, Defendant-Appellee.**

Gen. No. 10,242.

Third District.

October 20, 1960.

Willis P. Ryan, of Mattoon (Harlan Heller and Orville F. Schoch, of counsel) for appellant.

Grenville Beardsley, Attorney General of the State of Illinois (William C. Wines and Theodore G. Maheras, Assistant Attorneys General, of counsel) for appellee.

ROETH, JUSTICE.

Plaintiff is a motor vehicle dealer and has been so engaged since 1946. In 1957 he received the regular renewal license to engage in the business of selling Oldsmobile automobiles from the Secretary of State. On July 30, 1957, plaintiff was given notice by the Secretary of State that a hearing would be held on August 7, 1957, to determine whether or not plaintiff's 1957 license should be revoked, the ground of such proposed action being:

> "The licensee has violated Section 16d(2) of the Motor Vehicle Law in that he has been guilty of a fraudulent act in connection with selling, bartering, exchanging, offering for sale, or otherwise dealing in motor vehicles."

At the time this notice was given the Motor Vehicle Law of 1919 was still in effect. Ill. Rev. Stat., 1955, Chap. 95½, Sec. 16f of this act provided:

> "The Secretary of State is hereby authorized to revoke the license of any licensee if, after notice and hearing, it finds that such licensee has been guilty of any act or omission which would have been a ground for the denial of such license under Section 16d of this Act, or for violation of any of the provisions of this Act relating to the licensing and regulation of motor vehicle dealers."

Section 16g of this act provided in part as follows:

"No license shall be revoked except after hearing by the Secretary of State thereon. The Secretary of State may fix the time and place of such hearing as it may desire, and shall give the licensee at least five (5) days notice of the time and place of such hearing. The order revoking such license shall not be effective until after ten days written notice thereof to the licensee, after such hearing has been held. The Secretary of State shall fix the time and place of such hearing. . . . All final administrative decisions of the Secretary of State under any of the provisions of Sections 16a to 16g, each inclusive, shall be subject to judicial review pursuant to the provisions of the 'Administrative Review Act', approved May 8, 1945, and all amendments and modifications thereof, and the rules adopted pursuant thereto. The term 'administrative decision' is defined as in Section 1 of the 'Administrative Review Act.'"

And Sec. 16d(2) of this act as referred to in the aforesaid notice provided:

"The Secretary of State shall deny the application of any person for a license as a motor vehicle dealer in this State if, after notice and hearing, the Secretary of State determines that such applicant:
". . .
"(2) Has been guilty of a fraudulent act in connection with selling, bartering, exchanging, offering for sale or otherwise dealing in motor vehicles."

Pursuant to the aforesaid notice a hearing was commenced before a hearing officer designated by the Secretary of State. The plaintiff and his counsel

410

were present at this hearing. Evidence was heard on behalf of the Secretary of State, at the conclusion of which the hearing officer stated that he did not have a full set of facts before him to make a decision either for plaintiff or the Secretary of State, whereupon he continued the hearing until September 18, 1957.

On September 3, 1957, counsel for the Secretary of State gave notice that he would appear before the hearing officer on September 6 and move for leave to amend the original notice of July 30, 1957. Although counsel for plaintiff were unable to be present before the hearing officer on September 6 because of prior commitments, and had so notified him by telephone and requested a week's continuance, the hearing officer granted the motion to amend. The amended notice was then filed and served upon plaintiff. This amended notice stated that a hearing would be held on September 18, 1957, to determine whether or not plaintiff's 1957 license should be revoked, the ground of such proposed action being:

"1. The licensee has violated provisions of the Illinois Motor Vehicle Law in that:

"(a) Said licensee has geen guilty of a fraudulent act in connection with selling, bartering, exchanging, offering for sale, or otherwise dealing in motor vehicles.

"(b) Said licensee has failed to produce pertinent books, records, letters, and contracts concerning the licensee's business in the State of Illinois and relating to written complaints made against said licensee.

"2. The licensee has violated provisions of the Uniform Motor Vehicle Anti-Theft Act in that:

"(a) Said licensee has failed to deliver a certificate of title which was delivered to the licensee as a

411

lien or encumbrance holder immediately upon final payment of such lien or encumbrance to the owner of the motor vehicle with proper evidence of satisfaction of such lien or encumbrance.

"(b) Said licensee has sold or transferred title to a motor vehicle without complying with the provisions of said Act.

"(c) Said licensee has failed to maintain a record of all used motor vehicles sold or exchanged by the licensee or received or accepted by the licensee for sale or exchange containing the information required by said Act.

"(d) Said licensee has denied a police officer authority to examine such records in his place of business as required by said Act."

On September 18, 1957, the hearing proceeded to a conclusion with evidence on behalf of both the Secretary of State and plaintiff being heard. Following the conclusion of the hearing, the hearing officer apparently prepared a transcript of the record and presented it to the Secretary of State for examination and decision. On December 5, 1957, the Secretary of State filed an 11 page report in which he reviewed the testimony, made findings of fact based upon such review, made findings of law, overruled objections and directed an order to issue revoking plaintiff's 1957 dealer's license. The order of revocation was entered the same day. Plaintiff promptly sought a judicial review of this administrative decision. Obviously, plaintiff could not secure a review of the judgment revoking his 1957 license, in the Circuit Court and thereafter in the Appellate and Supreme Courts as provided by law, prior to the expiration of the 1957 licensing period. On December 13, 1957, plaintiff secured a stay order from the Circuit Court

of Effingham County pursuant to the provisions of the Administrative Review Act, staying the decision of the Secretary of State. So far as the record in the case before us shows, this stay order is still in full force and the judicial review of the order revoking plaintiff's 1957 license is still pending in the Circuit Court of Effingham County.

The above matter is not before us for review. We have set out the highlights of the 1957 hearing because they bear upon the case before us in a limited manner as will hereinafter appear. The case before us is an appeal from the order of the Circuit Court of Sangamon County affirming the order of the Secretary of State, after hearing, in which order the Secretary of State denied the application of plaintiff for renewal of his automobile dealer's license for the year 1958.

At the outset certain statutory changes are called to our attention. The 1957 Illinois Motor Vehicle Law became effective on January 1, 1958. 1957 Ill. Rev. Stat. Chap. 95½ Sec. 10–108. Although this new Act made certain changes in the statutory provisions, it provided in Sec. 10–106 that the provisions of the new Act, insofar as they are the same or substantially the same as those of any prior Act, should be construed as a continuation of the prior Act. By Sec. 5–101 it is provided in general that no person shall engage in the business of selling new motor vehicles unless licensed to do so by the Secretary of State. The section then provides that an application for such a license shall be filed with the Secretary of State upon forms prescribed by the Secretary of State. This section also in sub-section (h) provides for the renewal of a license issued for a previous year, in the following language:

"(h) A new motor vehicle dealer's license may be renewed upon application and payment of

413

the fee required herein as in the case of an original license, provided, however, that in case an application for the renewal of an effective license is made during the month of December, such effective license shall remain in force until such application is granted or denied by the Secretary of State."

As to both an application for a new dealer's license and a renewal of an existing dealer's license, subsection (e) provides as follows:

"(e) The Secretary of State shall within a reasonable time after receipt thereof, examine an application submitted to him under this section *and unless he makes a determination* that the application submitted to him does not conform with the requirements of this section or *that grounds exist for a denial of the application, as prescribed in Section 5–501 of this Act,* grant the applicant an original new motor vehicle dealer's license in writing for his established place of business and a supplemental license in writing for each other place of business in such form as he may prescribe by rule or regulation which shall include the following: " (Emphasis supplied.)

Section 5–501 referred to above provides as follows:

"The license of a new motor vehicle dealer, used motor vehicle dealer, transporter, used parts dealer, wrecker or rebuilder may be denied, revoked or suspended if the Secretary of State finds that such new motor vehicle dealer, used motor vehicle dealer, transporter, used parts dealer, wrecker or rebuilder, or any officer, director, partner, manager or member of such new motor vehicle dealer, used motor vehicle dealer, transporter, used parts dealer, wrecker or rebuilder has:

414

"1. violated any of the provision of this Act;

"2. made any material misrepresentation to the Secretary of State in connection with an application for a license;

"3. been guilty of a fraudulent act in connection with selling, bartering, exchanging, offering for sale or otherwise dealing in motor vehicles;

"4. as a new motor vehicle dealer has no contract with a manufacturer or enfranchised distributor to sell such new motor vehicle in this State;

"5. not maintained an established place of business as defined in this Act;

"6. failed to file or produce for the Secretary of State any application, report, document or other pertinent books, records, documents, letters, contracts, required to be filed or produced under the provisions of this Act or any rule or regulation made by the Secretary of State pursuant to this Act."

By Sec. 2–117 the procedure for hearings is set up in the following language:

"(a) Upon the suspension, revocation or denial of the issuance of a license, permit or registration or certificate of title under this Act of any person the Secretary of State shall immediately notify such person in writing and upon his written request shall afford him an opportunity for a hearing as early as practical within 20 days after receipt of such request, in either the County of Sangamon or the County of Cook as such person may specify, unless both parties agree that such hearing may be held in some other county.

". . .

"(c) Upon any such hearing, the Secretary of State, or his authorized agent may administer oaths and issue subpoenas for the attendance of witnesses and the production of relevant books

415

and records and may require an examination of such person. Upon any such hearing, the Secretary of State shall either rescind or, good cause appearing therefor, continue, change or extend the Order of Revocation or Suspension, as the case may be."

So far as the application for a new car dealer's license or the renewal of license issued for the previous year is concerned, the old Act provided that such application could only be denied after notice and hearing, whereas under the new act the Secretary of State may make an initial determination that grounds exist for denying the application. After making the initial determination he is required to give notice of that determination and afford the applicant the opportunity for a hearing. If no hearing is requested, we take it that the initial determination would become final. However, if a hearing is demanded, the Secretary of State is required to substantiate his initial determination by competent evidence and in accordance with usual procedure attendant upon administrative hearings. The final decision as to whether the application should be denied is then based upon the product of the hearing and not upon the initial determination of whether grounds exist for denying the application.

On October 31, 1957, prior to the decision of the Secretary of State revoking his 1957 license, plaintiff made application for a renewal of his license for the year 1958 under the then applicable provisions of the Motor Vehicle Act of 1919. Although Sec. 16d of the Act provided that all licenses shall be granted or refused within 30 days after application, no action was taken by the Secretary of State within the prescribed time. After the decision of the Secretary of State revoking his 1957 license, and on December 31, 1958, plaintiff again made application for a 1958

dealer's license. This application was prepared by one of the employees of the Secretary of State in the Secretary of State's office at plaintiff's request.

On January 30, 1958, plaintiff received a notice from the Secretary of State that his application for a 1958 license was denied. This notice stated that plaintiff's application for renewal of his dealer's license for the year 1958 was being denied for the reason that plaintiff's 1957 license had been revoked and that he was therefore not eligible for renewal of his motor vehicle dealer's license and also that plaintiff had made a material misrepresentation in connection with his application for license, had been guilty of fraudulent acts in connection with selling of motor vehicles, had failed to produce pertinent books and records after a proper demand made by the Secretary of State and acted as a new motor vehicle dealer without being properly licensed to do so. Plaintiff then requested a hearing and a hearing was had on February 14, 1958. Subsequently on June 10, 1958, a final decision was rendered by the Secretary of State denying plaintiff's application for renewal of his dealer's license. Under the present statutory provisions and rules of court, we are of the opinion that plaintiff could not secure a review of the decision of the Secretary of State denying his 1958 application for renewal of his dealer's license, in the Circuit Court and thereafter in the Appellate and Supreme Courts, as provided by law, prior to the expiration of the 1958 licensing period.

Prior to the 1958 hearing, plaintiff demanded and received a bill of particulars as to the charges forming the basis of the denial of his 1958 application. These charges fall into 4 categories, namely:

(1) That he made a material misrepresentation to the Secretary of State in his application for a 1958 dealer's license in that he represented

he was to engage in selling Oldsmobile automobiles when in fact he was also to engage in selling Nash automobiles.

(2) That he acted as a dealer in Nash automobiles by advertising in newspapers that he was a Nash dealer.

(3) That he was guilty of fraudulent acts in dealing in motor vehicles.

(4) That he failed to produce books and records on demand.

It should be particularly noted, that the fraudulent acts specified above under (3) and the failure to produce records specified above under (4), as set out in the bill of particulars, were the same fraudulent acts and the same failure to produce records as were charged by the Secretary of State in 1957 and which formed the basis of the decision of the Secretary of State revoking plaintiff's 1957 license.

As to the first charge, it appears from the record before us, that in both the October 31 and December 31 applications for a 1958 license, plaintiff, in response to a question in the application as to the make of automobiles to be dealt in, specified only "Oldsmobile." About the middle of December, 1957, plaintiff made application with American Motors Corporation for a Rambler franchise. On January 2, 1958, a Rambler representative called him and advised him that his application had gone through and that he could have some Rambler cars. He left on the same day to pick up the cars and returned to his place of business on January 4, 1958. On January 4, 1958, he sold his first Rambler automobile. On January 30, 1958, plaintiff wrote the Secretary of State advising him that he had acquired a Rambler franchise and that he had negotiated his first sale on January 4 and requested the proper forms to be submitted with reference to his American Motors franchise. Forms

418

were furnished by the Secretary of State pursuant to this request. On February 8, 1958, he filed with the Secretary of State on the forms furnished, a new application for 1958 in which he stated that he expected to sell both Oldsmobile and Rambler cars. To this is attached a statement of contract between dealer and manufacturer or distributor duly executed by American Motors Sales Corporation.

■■ The Secretary of State contends that failure of plaintiff to include the Rambler in the applications of October 31 and December 31 for renewal of his license for 1958 constituted a material misrepresentation. Sec. 16b of the Motor Vehicle Law of 1919 provided that the application should contain among other things:

"The name of each manufacturer or enfranchised distributor (if any) of new motor vehicles with whom the applicant has contracted or is contracting for the sale of such new motor vehicles. As evidence of this fact, the application shall be accompanied by a signed statement from each such manufacturer or enfranchised distributor."

This in substance is likewise incorporated in the 1957 Act in Sec. 5–101(b)4. Obviously plaintiff was in no position to include Rambler automobiles in his application of October 31 for the reason that he had not yet even entered into negotiations for a Rambler franchise. Likewise in his December 31 application he could not have included Rambler automobiles because it was not until January 2, 1958, that the negotiations were consummated and a contract entered into. As of December 31, 1957, it would not have been possible for him to furnish the Secretary of State with the required evidence of such a contract. Had he included Rambler automobiles in his December 31 application under these circumstances it might well have been

seriously contended that a material misrepresentation had been made.

■ It is further contended by the Secretary of State that a failure to amend his December 31 application advising the Secretary of State that plaintiff had become a dealer for Rambler automobiles constituted a material misrepresentation. Sec. 5–101(c) of the 1957 Motor Vehicle Law provides in part as follows:

> "Any change which renders no longer accurate any information contained in any application for a new motor vehicle dealer's license shall be amended within thirty days after the occurrence of such change on such form as the Secretary of State may prescribe by rule or regulation, . . . ."

Plaintiff's letter of January 30, 1958, furnishes the new information and in our opinion constitutes a sufficient amendment of the previous application. It was sent to the Secretary of State within the 30 day period. The filing of the forms with the Secretary of State would relate back to the time when the Secretary of State was actually furnished with the new information, i. e., January 30, 1958. This view is fortified by the testimony of one of the supervisors in the license division of the Secretary of State, as to the general policy of the Secretary of State's office in matters of this kind. This supervisor testified in substance that there is no interpretation laid down by the Secretary of State's office as to when a dealer must advise the Secretary of State as to when he has taken on another make of automobile; that the Secretary of State has no procedure or system whereby his employees determine whether certain reports are due or not due from a dealer; that if a licensed dealer wrote into Rambler and said "I would like to sell Ramblers" he would not be expected to notify

the Secretary of State at that time; that the signing of the application for a franchise would not necessitate the Secretary of State being advised of the date of the signing of the application; that this would not be considered a fraud by the Secretary of State; that when the franchise was returned to the dealer and the dealer was in fact recognized as a dealer, the dealer has a certain time to notify the Secretary of State of any change which would render the previous information incorrect.

As to the second charge, the record reveals that after making application for a Rambler franchise and on December 19, 1957, the plaintiff inserted an advertisement in several newspapers. An examination of this advertisement reveals that it is primarily an advertisement of certain used cars for sale by plaintiff with the price being asked for each car. However, the advertisement does contain this statement:

> "Goers Motor Sales has just signed a franchise for the Nash Rambler, along with the Oldsmobile dealership, which we have had for some time."

The above is the only reference to "Rambler" in the advertisement.

It is contended that the mere insertion of this statement in the advertisement is tantamount to acting as a dealer of Nash automobiles. Actually at the time this advertisement was inserted in the newspapers, plaintiff had only signed an application for a franchise so that technically the statement is incorrect. However, he did not advertise any Nash Rambler automobiles for sale. He did not sell or attempt to sell any Nash Rambler automobiles between the time these advertisements were placed and January 4, 1958, for he had none to sell. It was not until after he was notified that his application for a franchise had been approved, that he actually acted as such a dealer by the

sale on January 4, 1958, of the first Rambler automobile. We are therefore of the opinion that there is no merit to the contention of the Secretary of State that the mere insertion of the foregoing statement in the advertisement was tantamount to acting as a dealer.

We now come to the most important problem in this case which revolves around the charges falling within categories 3 and 4 as heretofore noted. These involve application of the same principles of law and are therefore considered together. To sustain the two charges falling within these categories the Secretary of State offered in evidence a transcript of the testimony taken upon the revocation hearing held in 1957. None of the witnesses who then testified were called to testify on the hearing, the record of which is before us. Counsel for plaintiff strenuously objected to the admission of this transcript. An examination of the decision of the Secretary of State rendered in June, 1958, after the 1958 hearing, reveals that primary reliance is placed by the Secretary of State on this transcript of testimony in his decision to deny renewal of plaintiff's license for 1958. It is further clear from a reading of the brief filed on behalf of the Secretary of State in this court, that counsel for the Secretary of State is contending that this transcript of testimony was competent evidence in the 1958 hearing, of the facts contained in that transcript.

It is the further contention of counsel for the Secretary of State that in any event he is entitled to take advantage of his decision, order or judgment revoking plaintiff's 1957 license when considering the 1958 application, notwithstanding the stay order of the Circuit Court of Effingham County on the theory that the stay order does not annul or set aside his decision, order or judgment. On the other hand counsel for plaintiff contends that the transcript was inadmissible

under the authority of George v. Moorhead, 399 Ill. 497, 78 N.E.2d 216.

█ In the recent case of The People ex rel. Charles F. Carpentier, Secretary of State v. Goers, etc., Case #35673 decided at the September 1960 term of the Illinois Supreme Court, that court in discussing the effect of a stay order in a situation as here presented said:

> "Judicial review of the administrative revocation of a license under this statute would be meaningless if, in the face of a stay order, the administrative officer was free to deny a license for a subsequent period upon the identical grounds involved in the pending action. The stay of a revocation order under this statute must therefore mean that while the administrative review proceeding is pending, the grounds upon which the revocation was based may not serve as the basis for a denial of a license for a subsequent period. Lauren W. Gibbs, Inc. v. Monson, 102 Utah 234, 129 P.2d 887."

It would thus appear that the Secretary of State was not entitled to consider the 1957 proceedings or the judgment entered thereon as grounds for denial of the 1958 application as long as the stay order remained effective and the case was still pending.

We are aware that the Supreme Court in the above case has said that "the ground upon which the license was revoked may serve also as the basis for denial of an application for a license for a subsequent year." As we interpret this statement, in the light of other language in the Supreme Court's opinion, the Secretary of State may continue, to assign as grounds, for refusal to grant a renewal of plaintiff's license for each year subsequent to 1957, the same grounds as

assigned for revoking the plaintiff's 1957 license. However, the matter becomes one of proof and if he does so assign such grounds, he becomes obligated to prove such grounds without reference to the prior proof and hearing, especially where, as in this case, there is a stay order.

We have considered the merits of this controversy in view of the holdings in Technical Radio Laboratory v. Federal Radio Commission, 36 F.2d 111, and Dyer v. Securities and Exchange Commission, 266 F.2d 33, and cases therein cited. We are not unmindful of the decisions in Maywood Trotting Ass'n v. Illinois Harness Racing Commission, 15 Ill.2d 559, 155 N.E.2d 626; La Salle Nat. Bank v. City of Chicago, 3 Ill.2d 375, 121 N.E.2d 486; and Nat. Jockey Club v. Illinois Racing Commission, 364 Ill. 630, 5 N.E.2d 224.

Having concluded that we are obliged to consider this case on the merits we are of the opinion that the evidence produced on the hearing denying plaintiff's application for license in 1958, as to the charges falling within categories (1) and (2), as hereinbefore set out, is legally insufficient to establish such charges by the Secretary of State and that the transcript of the evidence of the 1957 hearing was inadmissible in the 1958 hearing. Accordingly the judgment of the Circuit Court of Sangamon County is reversed and the decision, order or judgment of the Secretary of State denying plaintiff's 1958 application is likewise reversed.

Reversed.

CARROLL, P. J. and REYNOLDS, J., concur.