KFKB BROADCASTING ASS'N, Inc., v.
FEDERAL RADIO COMMISSION.

No. 5240.

Court of Appeals of District of Columbia.

Argued Jan. 6, 1931.
Decided Feb. 2, 1931.

Geo. E. Strong, of Washington, D. C., for appellant.

Thad H. Brown, Arthur W. Scharfeld, and D. M. Patrick, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice.

Appeal from a decision of the Federal Radio Commission denying appellant's application for the renewal of its station license.

The station is located at Milford, Kan., is operating on a frequency of 1,050 kilocycles with 5,000 watts power, and is known by the call letters KFKB. The station was first licensed by the Secretary of Commerce on September 20, 1923, in the name of the Brinkley-Jones Hospital Association, and intermittently operated until June 3, 1925. On October 23, 1926, it was relicensed to Dr. J. R. Brinkley with the same call letters and continued to be so licensed until November 26, 1929, when an assignment was made to appellant corporation.

On March 20, 1930, appellant filed its application for renewal of license (Radio Act of 1927, c. 169, 44 Stat. 1162, U. S. C. Supp. 3, tit. 47, § 81, et seq. [47 USCA § 81 et seq.]). The commission, failing to find that public interest, convenience, or necessity would be served thereby, accorded appellant opportunity to be heard. Hearings were had on May 21, 22, and 23, 1930, at which appellant appeared by counsel and introduced evidence on the question whether the granting of the application would be in the public interest, convenience, or necessity. Evidence also was introduced in behalf of the commission. Upon consideration of the evidence and arguments, the commission found that public interest, convenience, or necessity would not be served by granting the application and, therefore, ordered that it be denied, effective June 13, 1930. A stay order was allowed by this court, and appellant has since been operating thereunder.

The evidence tends to show that Dr. J. R. Brinkley established Station KFKB, the Brinkley Hospital, and the Brinkley Pharmaceutical Association, and that these institutions are operated in a common interest. While the record shows that only 3 of the 1,000 shares of the capital stock of appellant are in Dr. Brinkley's name and that his wife owns 381 shares, it is quite apparent that the doctor actually dictates and controls the policy of the station. The Brinkley Hospital, located at Milford, is advertised over Station KFKB. For this advertising the hospital pays the station from $5,000 to $7,000 per month.

The Brinkley Pharmaceutical Association, formed by Dr. Brinkley, is composed of druggists who dispense to the public medical preparations prepared according to formulas of Dr. Brinkley and known to the public only by numerical designations. Members of the association pay a fee upon each sale of certain of those preparations. The amounts thus received are paid the station, presumably for advertising the preparations. It appears that the income of the station for the period February, March, and April, 1930, was as follows:

Brinkley Pharmaceutical Association ........................ $27,856.40
Brinkley Hospital............. 6,500.00
All other sources............. 3,544.93

Total .................... $37,901.33

Dr. Brinkley personally broadcasts during three one-half hour periods daily over the station, the broadcast being referred to as the "medical question box," and is devoted to diagnosing and prescribing treatment of cases from symptoms given in letters addressed either to Dr. Brinkley or to the station. Patients are not known to the doctor except by means of their letters, each letter containing a code signature, which is used in making answer through the broadcasting station. The doctor usually advises that the writer of the letter is suffering from a certain ailment, and recommends the procurement from one of the members of the Brinkley Pharmaceutical Association, of one or more of Dr. Brinkley's prescriptions, designated by numbers. In Dr. Brinkley's broadcast for April 1, 1930, presumably representative of all, he prescribed for forty-four different patients and in all, save ten, he advised the procurement of from one to four of his own prescriptions. We reproduce two as typical:

"Here's one from Tillie. She says she had an operation, had some trouble 10 years ago. I think the operation was unnecessary, and it isn't very good sense to have an ovary removed with the expectation of motherhood resulting therefrom. My advice to you is to use Women's Tonic No. 50, 67, and 61. This combination will do for you what you desire if any combination will, after three months persistent use.

"Sunflower State, from Dresden Kans. Probably he has gall stones. No, I don't mean that, I mean kidney stones. My advice to you is to put him on Prescription No. 80 and 50 for men, also 64. I think that he will be a whole lot better. Also drink a lot of water."

In its "Facts and Grounds for Decision," the commission held "that the practice of a physician's prescribing treatment for a patient whom he has never seen, and bases his diagnosis upon what symptoms may be recited by the patient in a letter addressed to him, is inimical to the public health and safety, and for that reason is not in the public interest"; that "the testimony in this case shows conclusively that the operation of Station KFKB is conducted only in the personal interest of Dr. John R. Brinkley. While it is to be expected that a licensee of a radio broadcasting station will receive some remuneration for serving the public with radio programs, at the same time the interest of the listening public is paramount, and may not be subordinated to the interests of the station licensee."

■■ This being an application for the renewal of a license, the burden is upon the ap-

plicant to establish that such renewal would be in the public interest, convenience, or necessity (Technical Radio Lab. v. Fed. Radio Comm., 59 App. D. C. 125, 36 F.(2d) 111, 114, 66 A. L. R. 1355; Campbell v. Galeno Chem. Co., 281 U. S. 599, 609, 50 S. Ct. 412, 74 L. Ed. 1063), and the court will sustain the findings of fact of the commission unless "manifestly against the evidence." Ansley v. Fed. Radio Comm., 60 App. D. C. 19, 46 F.(2d) 600.

We have held that the business of broadcasting, being a species of interstate commerce, is subject to the reasonable regulation of Congress. Technical Radio Lab. v. Fed. Radio Comm., 59 App. D. C. 125, 36 F.(2d) 111, 66 A. L. R. 1355; City of New York v. Fed. Radio Comm., 59 App. D. C. 129, 36 F.(2d) 115; Chicago Federation of Labor v. Fed. Radio Comm., 59 App. D. C. 333, 41 F.(2d) 422. It is apparent, we think, that the business is impressed with a public interest and that, because the number of available broadcasting frequencies is limited, the commission is necessarily called upon to consider the character and quality of the service to be rendered. In considering an application for a renewal of the license, an important consideration is the past conduct of the applicant, for "by their fruits ye shall know them." Matt. VII:20. Especially is this true in a case like the present, where the evidence clearly justifies the conclusion that the future conduct of the station will not differ from the past.

In its Second Annual Report (1928), p. 169, the commission cautioned broadcasters "who consume much of the valuable time allotted to them under their licenses in matters of a distinctly private nature which are not only uninteresting, but also distasteful to the listening public." When Congress provided that the question whether a license should be issued or renewed should be dependent upon a finding of public interest, convenience, or necessity, it very evidently had in mind that broadcasting should not be a mere adjunct of a particular business but should be of a public character. Obviously, there is no room in the broadcast band for every business or school of thought.

In the present case, while the evidence shows that much of appellant's programs is entertaining and unobjectionable in character, the finding of the commission that the station "is conducted only in the personal interest of Dr. John R. Brinkley" is not "manifestly against the evidence." We are further of the view that there is substantial evidence in support of the finding of the Commission that the "medical question box" as conducted by Dr. Brinkley "is inimical to the public health and safety, and for that reason is not in the public interest."

Appellant contends that the attitude of the commission amounts to a censorship of the station contrary to the provisions of section 29 of the Radio Act of 1927 (47 USCA § 109). This contention is without merit. There has been no attempt on the part of the commission to subject any part of appellant's broadcasting matter to scrutiny prior to its release. In considering the question whether the public interest, convenience, or necessity will be served by a renewal of appellant's license, the commission has merely exercised its undoubted right to take note of appellant's past conduct, which is not censorship.

As already indicated, Congress has imposed upon the commission the administrative function of determining whether or not a station license should be renewed, and the commission in the present case has in the exercise of judgment and discretion ruled against the applicant. We are asked upon the record and evidence before the commission to substitute our judgment and discretion for that of the commission. While section 16 of the Radio Act of 1927 (44 Stat. 1162, 1169, U. S. C., Supp. 3, tit. 47, § 96) authorized an appeal to this court, we do not think it was the intent of Congress that we should disturb the action of the commission in a case like the present. Support is found for this view in the Act of July 1, 1930 (46 Stat. 844 [47 USCA § 96]), amending section 16 of the 1927 Act. The amendment specifically provides "that the review by the court shall be limited to questions of law and that findings of fact by the commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the commission are arbitrary or capricious." As to the interpretation that should be placed upon such provision, see Ma-King v. Blair, 271 U. S. 479, 483, 46 S. Ct. 544, 70 L. Ed. 1046.

We are therefore constrained, upon a careful review of the record, to affirm the decision.

Affirmed.