GREATER KAMPESKA RADIO CORPORA-
TION v. FEDERAL COMMUNICA-
TIONS COMMISSION.

No. 7196.

United States Court of Appeals for the
District of Columbia.

Decided Oct. 16, 1939.

Ben S. Fisher, Charles V. Wayland, and John W. Kendall, all of Washington, D. C., for appellant.

William J. Dempsey, Gen. Counsel, William C. Koplovitz, Asst. Gen. Counsel, Wm. H. Bauer, Fanney Neyman, and Andrew G. Haley, all of the Federal Communications Commission, for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

Appellant, The Greater Kampeska Radio Corporation, is the licensee of Station KWTN operating at Watertown, South Dakota. It appealed from a decision of the Communications Commission refusing its application for renewal of the station license.

The grounds for the Commission's decision, so far as pertinent, are as follows:

"2. Radio Station KWTN has been operated in violation of the Commission's rules governing the technical operation of broadcast stations, and the licensee thereof, Greater Kampeska Radio Corporation, through formal action of its officers and directors, was a party to a violation of Section 310(b) of the Communications Act of 1934, as amended.[1]

\* \* \*

"5. Without authority of the Commission, as required by Section 310(b) of the Communications Act of 1934, as amended, and in violation of that section, the controlling stock in the corporation holding the license of Station KGDY was transferred to the Greater Kampeska Radio Corporation through formal action of certain of the officers of both corporations.

\* \* \*

"3. By reason of its past conduct in disregarding the Communications Act and the Commission's rules, the licensee of the KWTN facilities has demonstrated an unfitness to continue further in the operation of these facilities and to properly meet the existing need for broadcast service in the area of Watertown, South Dakota.

\* \* \*

---

1 Section 310(b) provides: "The station license required hereby, the frequencies authorized to be used by the licensee, and the rights therein granted shall not be transferred, assigned, or in any manner either voluntarily or involuntarily disposed of, or indirectly by transfer of control of any corporation holding such license, to any person, unless the Commission shall, after securing full information, decide that said transfer is in the public interest, and shall give its consent in writing." 48 Stat. 1086, 47 U. S.C.A. § 310(b).

"We are of the opinion and so find that public interest, convenience and necessity will not be served by granting the applications of the Greater Kampeska Radio Corporation for construction permit and for renewal of the license of Station KWTN; * * *"

In its statement of facts the Commission made the following findings, among others:

"During the three year period immediately preceding the hearing upon these applications, the licensee of Station KWTN has repeatedly violated the Commission's rules governing the technical operation of broadcast stations, and has failed to reply to frequent discrepancy reports until demands were made by the Commission. These violations relate to the station licensee's failure to install a modulation meter; its failure to continue an approved frequency monitor in operation; the use of only one type 203A tube in the last radio stage when the license required two such tubes; its failure to announce recorded musical selections; its failure to equip the station with suitable voltmeters; its failure to log the names of political speakers and the nature of programs; its failure to have personnel sign station log; its failure to make log entries as to location and call announcements; its failure to indicate in the log the time of beginning and termination of programs; and its failure to maintain station logs in complete and legible form."

In his report to the Commission, the Examiner summarized the conduct of the station's management as follows:

"During the past three years and up to May 10, 1937, Station KWTN has been repeatedly notified of its violations of the Rules of the Commission and has very consistently failed to reply to the discrepancy reports as required, until after frequent demands by the Commission. Many of the replies to the Commission were evasive and equivocal, and, in a number of instances, apparently untrue. There are in the record a number of discrepancy reports and considerable correspondence relating thereto. Said reports relate to violations of Rules 129, 132, 135, 139, 142, 143, 144, 145, 172 a & b, 173, and 176. * * *

"The correspondence in the record indicates that the attention of the station was being constantly called to the condition of its equipment as indicated by the discrepancy reports. Apparently the station management was either not sufficiently familiar with the Commission's Rules and Regulations or else resorted to various subterfuges, as indicated in the correspondence, by advising the Commission at one time that the matters about which complaints were made had been corrected and later offering some excuse upon which to base a request for a further extension of time within which to meet the Commission's requirements."

The report, findings, and grounds of decision are amply substantiated by the evidence contained in a voluminous record. Appellant does not deny their correctness but does deny that they provide a proper basis for the Commission's decision.

The Communications Act provides that action of the Commission with reference to applications for renewal of licenses [2] "shall be limited to and governed by the same considerations and practice which affect the granting of original applications." The considerations and practice governing the granting of original applications are left largely to the Commission, the Act requiring generally that the Commission shall determine whether the public interest, convenience or necessity would be served by granting a license.[3] However, in Section 308 of the Act, it is provided that all applications for licenses and renewal of licenses shall set forth such facts as the Commission, by regulation, may prescribe "as to the citizenship, character, and financial, technical, and other qualifications of the applicant to operate the station; * * *." And in Section 312 (a) the Act, provides for revocation of station licenses "for failure to operate substantially as set forth in the license, or for violation of or failure to observe any of the restrictions and conditions of this Act or of any regulation of the Commission authorized by this Act * * *." These provisions of Sections 308 and 312 suggest the nature of the considerations which Congress intended to be weighed, and the practices which it intend-

[2] Section 307(d), 48 Stat. 1083, 47 U.S. C.A. § 307(d).
[3] Section 309(a), 48 Stat. 1085, 47 U. S.C.A. § 309(a). Cf. Beebe v. Federal Radio Comm., 61 App.D.C. 273, 61 F. 2d 914; Brahy v. Federal Radio Comm., 61 App.D.C. 204, 59 F.2d 879.

ed to be followed, in determining whether applications for renewal should be granted.[4]

In acting upon an original application, the Commission may perhaps be required to speculate to some extent as to the qualifications of the applicant; but in acting upon a petition for renewal, or upon a proposal to revoke a license, it has an additional basis of experience and conduct upon which to determine the character and fitness of the licensee, and his qualifications to operate the station.[5] In Trinity Methodist Church South v. Federal Radio Comm.,[6] we held it to be the duty of the Commission "to take notice of appellant's conduct in his previous use of the permit * * *." Regulations such as those which were frequently violated by appellant are vitally essential to maintenance of adequate radio service and reception.

The gist of appellant's argument seems to be that, considered by itself, each of its many and repeated violations of the law and of the Commission's rules was inconsequential; that most of them—over a period of time—had been rectified; that each such violation—considered by itself—fails to "lead to a logical inference that the Appellant is unfit, because it cannot logically be expected to recur in the future * * * [or] * * * logically show any disposition on the part of the Appellant to violate the law, * * *"; that the record fails to reveal any violations of technical rules between the time of the hearing and the date of the Commission's decision; and that on several prior occasions when renewal applications were filed, appellant's delinquencies were overlooked by the Commission. It is urged in this connection that as the Commission could grant renewals only after finding that the public interest, convenience, or necessity, would be served thereby, when it granted each of appellant's previous applications for renewal it made a final decision which each time wiped the slate clean upon the question of character and qualifications, and thereafter forever barred any further consideration of such delinquencies, in determining the appellant's fitness to operate a broadcasting station. This argument has much the same substance as would a contention that because an indulgent judge had repeatedly granted probation to a confirmed criminal, he would be barred from considering the criminal's past record, when he next committed a crime and again applied for probation.

Appellant places considerable stress, also, upon the need for broadcasting services in the area served by Station KWTN, and upon the fact that "No question was raised upon the record with respect to the efficiency of the station's present transmitting equipment and antenna system or the suitability of its site." These are no doubt important considerations, to be weighed by the Commission in making its determination. But other considerations are important also, including the willingness and ability of the licensee to comply with the law and with the rules and regulations prescribed by the Commission; in order to guarantee so far as possible a wholesome policy in management and operation.[7]

We think the record in the present case fully justifies the Commission's action in refusing to renew the license.[8]

Affirmed.

---

[4] See Riker v. Federal Radio Comm., 60 App.D.C. 373, 55 F.2d 535; Boston Broadcasting Co. v. Federal Radio Comm., 62 App.D.C. 299, 67 F.2d 505, certiorari denied, 290 U.S. 679, 54 S.Ct. 103, 78 L.Ed. 586.

[5] KFKB Broadcasting Assn., Inc. v. Federal Radio Comm., 60 App.D.C. 79, 81, 47 F.2d 670, 672: "In considering an application for a renewal of the license, an important consideration is the past conduct of the applicant, for 'by their fruits ye shall know them.'"

[6] 61 App.D.C. 311, 313, 62 F.2d 850, 852, certiorari denied, 288 U.S. 599, 53 S.Ct. 317, 77 L.Ed. 975.

[7] See Heitmeyer v. Federal Communications Comm., 68 App.D.C. 180, 187, 188, 95 F.2d 91, 98, 99.

[8] See Trinity Methodist Church South v. Federal Radio Comm., 61 App.D.C. 311, 313, 62 F.2d 850, 852, cert. denied, 288 U.S. 599, 53 S.Ct. 317, 77 L.Ed. 975; Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147; Yankee Network, Inc. v. Federal Communications Comm., 71 App.D.C. 11, 107 F.2d 212, decided August 14, 1939, and cases cited; KFKB Broadcasting Ass'n, Inc. v. Federal Radio Comm., 60 App.D.C. 79, 81, 47 F. 2d 670, 672. See also, Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659; Federal Trade Comm. v. Algoma Lumber Co., 291 U.S. 67, 73, 54 S.Ct. 315, 78 L.Ed. 655; National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 270, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Pacific Greyhound Lines, Inc., 303 U.S. 272, 275, 58 S.Ct. 577, 82 L.Ed. 838.