WOKO, Inc. v. FEDERAL COMMUNICA-
TIONS COMMISSION (TROY BROAD-
CASTING CO., Inc., Intervener).

ADIRONDACK BROADCASTING CO.,
Inc. v. SAME.

Nos. 7312, 7313.

United States Court of Appeals for the
District of Columbia.

Decided Dec. 11, 1939.

Petition for Rehearing Dismissed
Jan. 24, 1940.

George O. Sutton, of Washington, D. C., for appellants.

William J. Dempsey, Gen. Counsel, and William C. Koplovitz, Asst. Gen. Counsel, of Federal Communications Commission, both of Washington, D. C., for appellee.

Philip G. Loucks, Arthur W. Scharfeld, and Joseph F. Zias, all of Washington, D. C., for intervener.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

These cases arise on motions to dismiss appeals from a decision of the Federal Communications Commission granting the application of the Troy Broadcasting Company, intervener herein, for a permit to construct a radio broadcast station at Troy, New York. In each case appellant claims to be a person aggrieved, or whose interests are adversely affected by the granting of the application; hence that it has an appealable interest under Section 402(b)(2) of the Federal Communications Act.[1] In each case the Commission contends that appellant has no standing to invoke the jurisdiction of this court to review the Commission's decision; and in each case, the intervener, Troy Broadcasting Company, challenges the sufficiency of appellant's reasons for appeal.

The jurisdiction of this court must be determined upon the basis of the assigned reasons of appeal.[2] The only reason assigned which suggests that appellants will be aggrieved, or their interests adversely affected, is the following, which is phrased in identical language in each case: "6. The Commission in erroneously granting the application of the Troy Broadcasting Company, Incorporated, illegally deprives appellant of a large portion of its listening audience, talent, program material and advertising revenue, with resultant deterioration of program service now rendered by appellant's station."

The question to be determined, therefore, is whether these allegations, if true, are sufficient to bring appellants within the terms of Section 402(b)(2) of the Communications Act, as persons aggrieved, or whose interests are adversely affected by the Commission's decision.

We have said in Sanders Brothers Radio Station v. Federal Communications Comm.,[3] and in Yankee Network, Inc. v. Federal Communications Comm.,[4] that a reason of appeal which alleges that such serious economic injury will result from the decision of the Commission as will destroy the ability of an existing licensee to operate its station in the public interest, is sufficient to bring a case before us on appeal under that section. We have said, on the other hand, that it was not the intention of the statute to permit an appeal by one whose interests are affected only incidentally.[5] And in Tri-State Broad-

---

[1] 48 Stat. 1093, 47 U.S.C.A. § 402(b)(2).

[2] Yankee Network, Inc. v. Federal Communications Comm., 71 App.D.C. 11, 107 F.2d 212, 224: " * * * our jurisdiction on appeal under the Communications Act depends upon whether reasons of appeal are assigned, which, if well founded, would show that the appellant is a per-son aggrieved or whose interests are adversely affected by the decision of the Commission from which the appeal is taken." Stuart v. Federal Communications Comm., 70 App.D.C. 265, 105 F.2d 788.

[3] 70 App.D.C. 297, 106 F.2d 321.

[4] 71 App.D.C. 11, 107 F.2d 212.

[5] Ibid.

casting Co., Inc. v. Federal Communications Comm.,[6] we held the decision of the Commission to be invulnerable to challenge under Section 402(b) (2) upon the theory of economic injury to an existing licensee, where it was based upon a finding —which was supported in turn by substantial evidence—that "it does not appear that the expected competition will immediately or ultimately result in such a reduction in income to Tri-State Broadcasting Company * * * as to require deterioration of its service to the listening public."

■ But it by no means follows that an appealable interest is necessarily shown even though an existing licensee may suffer such a reduction in income as will cause deterioriation of its service. The question in each case is one of the public interest. The underlying policy of the Communications Act is the securing and protection of the public interest. In the Tri-State case the Commission found that the existing licensee had made profits running as high as 28 per cent on its investment "although operating in a manner which was admittedly antagonistic to the people * * * and still having had but a small part of the potential business * * *." In that case we said: "The owner of an existing station may well contend in any case that a new station may reduce the present income of his station, but it requires more to justify the Commission re-

fusing to grant the new license. A mere showing that the income of an existing station may be reduced if another station enters its field is not sufficient. The appellant recognizes that such can not be the criterion of economic injury herein, as it charges that the competition complained of will be destructive and ruinous. This character of competition *may* affect the public interest, convenience and necessity, which is the statutory criterion under which the Commission must act."

■ Within the area bounded by the standard of public interest, convenience and necessity, the Commission has wide discretionary power. If it acts within this area of discretion prescribed by the Act,[7] and its determination is supported by substantial evidence, there is no ground or reason for judicial interference;[8] even though in a particular case its decision may cause injury to an existing licensee. This conclusion results, necessarily, from the power given to the Commission by the Communications Act to deny applications for modification of station licenses;[9] for new station licenses;[10] and for renewals thereof;[11] and to suspend or revoke operators' licenses.[12] It has been recognized by the courts in a number of cases.[13] Section 402(b) of the Communications Act provides, in express terms, for appeals by the persons referred to above,[14] Beyond this it speaks generally in terms of interested and aggrieved persons.[15] Although

[6] 71 App.D.C. 157, 107 F.2d 956, 957.

[7] Heitmeyer v. Federal Communications Comm., 68 App.D.C. 180, 189, 95 F.2d 91, 100.

[8] Ward v. Federal Communications Comm., 71 App.D.C. 166, 108 F.2d 486. See Rochester Telephone Corp. v. United States, 307 U.S. 125, 140, 59 S.Ct. 754, 762, 83 L.Ed. 1147: "Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontestable."

[9] Section 309(a), 48 Stat. 1085, 47 U.S.C.A. § 309(a).

[10] Section 309, 48 Stat. 1085, 47 U.S.C.A. § 309.

[11] Ibid.

[12] Section 303(m), 48 Stat. 1082, as amended, 50 Stat. 190, 47 U.S.C.A. § 303(m).

[13] Federal Radio Comm. v. Nelson Brothers Bond & Mortgage Co., 289 U.

S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406; Trinity Methodist Church, South v. Federal Radio Comm., 61 App. D.C. 311, 62 F.2d 850, certiorari denied, 288 U.S. 599, 53 S.Ct. 317, 77 L.Ed. 975; Greater Kampeska Radio Corp. v. Federal Communications Comm., 71 App.D.C. 117, 108 F.2d 5.

[14] Section 402(b), 48 Stat. 1093, as amended, 50 Stat. 197, 47 U.S.C.A. § 402(b), provides that an appeal may be taken:

"(1) By any applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission.

\* \* \* \* \* \*

"(3) By any radio operator whose license has been suspended by the Commission."

[15] Section 402(b)(2).

these words, when read literally, are susceptible of a very wide interpretation it is obvious that no such interpretation should be given to them, in view of the considerations set out above. Instead, it is apparent that the appealable interest of such a person is dependent upon considerations of public interest inherent in the particular case.

■ In our view, therefore, in order that a person, who challenges a decision of the Communications Commission, under Section 402(b) (2), may succeed, he must show that the Commission's action of which he complains is contrary to the public interest, convenience, or necessity. This being true, it follows that no showing of injury, suffered or threatened, would be sufficient unless it also appeared that, as a result of such injury, the public interest, convenience, or necessity would suffer. This may seem a harsh rule and a difficult burden, but it is the rule which governs one who enters this field of enterprise and it is a burden which he cannot escape.

■■ This brings us, then, to the further conclusion that no statement of reasons is sufficient to support an appeal under Section 402(b) (2), unless it speaks in terms of public interest, convenience, or necessity, or in equivalent terms. The reason assigned by appellants in the present cases does not so speak. The most that can be read into it is a contention that the Commission's decision will result in *deterioration* of appellants' service as now rendered. It is quite possible that the public interest may be better served by the coming of a new broadcasting station into the community, even though the result may be some reduction in income and some deterioration in the service of the appellants' stations.

■ Assuming, therefore, that these appeals were permitted to stand and that appellants were able to demonstrate to us every fact implicit in the reason assigned, their demonstration would *still not be* sufficient. Unless an appellant assigns a reason which alleges abuse of the Commission's discretionary power, there is no reason to assume that he is able to prove an abuse of that power, which militates against the public interest.

Appeals dismissed.