559 F.2d 720
 182 U.S.App.D.C. 99
 UNITED TELEPHONE COMPANY OF the CAROLINAS, INC., and
Carolina Telephone and Telegraph Company, Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
Southern Bell Telephone and Telegraph Co., Intervenor.
 No. 75-1886.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 18, 1976.
Decided April 25, 1977.
Rehearing Denied June 9, 1977.
 
 Warren E. Baker, Kansas City, Mo., with whom John M. Lothschuetz, Mansfield, Ohio, and Carolyn C. Hill, Washington, D. C., were on the brief, for petitioners.
 Jack David Smith, Counsel, F. C. C., Washington, D. C., with whom Ashton R. Hardy, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, F. C. C., Barry M. Grossman and James F. Ponsoldt, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondents. John E. Ingle, Counsel, F. C. C., Washington, D. C., also entered an appearance for respondent F. C. C.
 R. C. Howison, Jr., Raleigh, N. C., with whom John F. Beasley and R. Frost Branon, Jr., Atlanta, Ga., were on the brief, for intervenor. Thomas C. Cartwright, Atlanta, Ga., also entered an appearance for intervenor.
 Before TAMM, ROBB and WILKEY, Circuit Judges.
 Opinion for the Court filed by TAMM, Circuit Judge.
 Dissent filed by WILKEY, Circuit Judge.
 TAMM, Circuit Judge:
 
 
 1
 On December 26, 1972 United Telephone Co. of the Carolinas (United) and Carolina Telephone and Telegraph Co. (Carolina) each filed a Petition for Division of Charges with the Federal Communications Commission (FCC) urging the Commission to determine a just and reasonable division of the revenues from telecommunication services furnished through the combined facilities of United and Carolina, and the Southern Bell Telephone and Telegraph Co. (Southern Bell). They alleged that Southern Bell's rejection of their proposal that the "settlement ratio used in said (divisions) should recognize" their higher cost of capital[1] was unjust, unreasonable and unfair and thereby violated section 201 of the Communications Act of 1934, 47 U.S.C. § 201 (1970).[2] J.A. at A-3 to A-4, B-3 to B-4. Although the parties had submitted many pleading papers as of March 1973 arguing the merits of their respective positions, the Commission took no action on the petitions for two years. During that period United and Carolina continued to jointly provide telecommunication services with Southern Bell under the terms of a preexisting agreement.[3]
 
 
 2
 In February 1975 United and Carolina each filed a Supplement to their Petitions for Division of Charges renewing their allegations that they were not receiving a fair and equitable division of charges because the allocation formula did not recognize their higher cost of capital, J.A. at S-5, T-5, and urged the Commission to set a division of charges for the parties. J.A. at S-9, T-9. Two months later the Commission issued its decision that United and Carolina had not "sufficiently questioned the reasonableness of the existing method of dividing interstate tolls to warrant an investigation. . . ."[4] United and Carolina promptly filed a Petition for Reconsideration arguing that there was no "existing method of dividing interstate tolls" because Southern Bell had terminated the Traffic Agreement under which their joint operations had been conducted. J.A. at V-1 to V-2. They argued that the absence of any current agreement and the failure of the parties to set a mutually satisfactory division formula required the Commission to hold an evidentiary hearing and to establish a just and reasonable division of charges. J.A. at V-2 to V-3. The Commission again rejected United's and Carolina's arguments reasoning that whether there was a written agreement or not, the parties actually continued to operate their joint venture and to divide the revenues under a formula which had not been questioned sufficiently as to reasonableness to warrant Commission action. 54 F.C.C.2d 289 (1975).
 
 
 3
 In their appeal to this court United and Carolina contend that the Commission had no discretion to deny them a hearing on their petition and request that we direct the Commission to hold an evidentiary hearing and establish a just and reasonable division of charges between the parties in this joint venture. We refuse to narrowly construe the discretion inherent in the broad "public interest" standard under which the Commission regulates the interstate telecommunications industry. Whether the petitions in this case called for further agency action is a question well within that discretion and we find no abuse of discretion in the Commission's decision that they did not. United and Carolina were provided with a reasoned explanation of the Commission's decision which was responsive to their petitions. Even assuming that on a de novo review we would reach a decision different from the Commission's we would not say that the Commission's opinions reveal a lack of reasoned analysis.
 
 
 4
 The Communications Act of 1934 should not be turned into a mechanism whereby participants in a joint communications project can force the Federal Communications Commission to arbitrate contractual disputes over the division of residual revenues from their joint venture. The purpose of the Act is to protect the public interest rather than to provide a forum for the settlement of private disputes. See Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229 (1942) (dictum); Regents of New Mexico College of Agriculture and Mechanic Arts v. Albuquerque Broadcasting Co., 158 F.2d 900, 904 (10th Cir. 1947); WOKO, Inc. v. FCC, 71 App.D.C. 228, 109 F.2d 665, 667 (1939).
 
 
 5
 At the root of United's and Carolina's arguments is the implied, or at best ambiguously stated, conclusion that they are being compelled by the Commission to participate in a joint venture with Southern Bell under a division of charges settlement formula which in fact fails to compensate them for their costs of participation. The facts of this case simply do not support that conclusion. Although the Commission refused to increase United's and Carolina's share of the revenues from the joint venture, leaving them with an unsatisfactory economic choice, it is not forcing them to continue in the enterprise. Moreover, as the Commission has pointed out, United and Carolina have failed to allege that the result reached under the present division of charges formula does not actually compensate them for their costs.[5]
 
 
 6
 United and Carolina apparently argue that the Commission's statement that "(s)ection 201(a) of the Act imposes upon every common carrier engaged in interstate or foreign communications . . . the duty to furnish . . . service upon reasonable request . . .," 54 F.C.C.2d at 289, effectively prevents them from discontinuing joint through services with Southern Bell. Brief for Petitioners at 15-16. Even assuming that this facially innocuous restatement of section 201(a) was impliedly intended to order United and Carolina to continue their interconnection with Southern Bell, it could not have had that effect. Section 2(b) of the Communications Act of 1934 provides that "nothing in this chapter shall be construed . . . to give the Commission jurisdiction with respect to . . . any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier. . . ." 47 U.S.C. § 152(b)(2) (1970). United and Carolina have identified themselves as "connecting carriers", Brief for Petitioners at 4, a term defined as a carrier described in section 2(b). Communications Act of 1934, § 3(u), 47 U.S.C. § 153(u) (1970). Thus the Commission does not have the jurisdiction necessary to order United and Carolina to continue their interconnection with Southern Bell.
 
 
 7
 The obligations of section 201(a) run directly and unavoidably only to interstate carriers like Southern Bell. As connecting carriers, United and Carolina are only subject to such requirements tangentially because they have chosen to interconnect with interstate carriers. Section 201(a) does not give the Federal Communications Commission power to order purely intrastate communications companies to join with interstate companies in providing through route services. United and Carolina are free to remove their interconnection with Southern Bell and thereby also remove themselves completely from the jurisdiction of the Commission.[6]
 
 
 8
 In arguing that the Commission could not decline to exercise its powers to establish a just and reasonable division of joint charges where negotiations between the parties had reached an impasse, United and Carolina rely heavily on Alton R. R. v. United States, 287 U.S. 229, 53 S.Ct. 124, 77 L.Ed. 275 (1932). In Alton the Supreme court stated that under section 15(6) of the Interstate Commerce Act, which empowers the Interstate Commerce Commission to establish just divisions of joint rates,[7] the Commission "was not at liberty to decline to exercise its jurisdiction." Id. at 236, 53 S.Ct. at 127. The facts of that case are markedly different from the allegations of United and Carolina, however. Alton and other railroads with connecting lines had agreed on a division of rates for trips using track of more than one company. When the connecting lines unilaterally lowered the dollar amount remitted to Alton below that which had been agreed to, Alton petitioned the Interstate Commerce Commission to establish a just and reasonable division of joint revenues. With respect to "reshipping"[8] rates the Interstate Commerce Commission effectively ratified the departure from the agreed division by refusing relief based on the explicit finding that the division offered was not unjust or unreasonable. Id. at 236-37 & n.5, 53 S.Ct. 124. Alton's suit to set aside the order of the Commission to the extent that it required Alton to continue operations under the joint agreement at reduced compensation was dismissed by the district court for lack of jurisdiction.[9] Although the Supreme Court reversed the district court's jurisdictional holding,[10] it specifically pointed out that "(t)o take jurisdiction would not be tantamount to usurpation by the court of the functions of the Commission." Id. at 238, 53 S.Ct. at 127.
 
 
 9
 The court is not called upon here . . . to afford relief which the Commission, in the exercise of its powers, had found that the complainant was not entitled to receive. The court is not asked to prescribe reasonable divisions, or to direct that they be prescribed by the Commission.
 
 
 10
 Id. at 238-39, 53 S.Ct. at 127 (citations and footnotes omitted). In contrast, United and Carolina ask this court to hold that the Federal Communications Commission had no discretion to deny them an evidentiary hearing on their petitions and to issue an order requiring the Commission to prescribe the proper division of charges. Moreover, their claim is not that the Commission has by its inaction changed a division of charges which the parties had agreed to, but that the Commission has refused to prescribe a division different from that which the parties had in fact negotiated.
 
 
 11
 We do not intend to imply that the Commission lacks the authority to hold a hearing on the issues raised by United's and Carolina's petitions and to prescribe a just and reasonable division of charges if it so chooses. We simply hold that it was not an abuse of discretion for the Commission to dismiss their petitions without an evidentiary hearing on the grounds that United and Carolina had not sufficiently challenged the reasonableness of the existing division of joint revenues. Although they were given several opportunities to clarify their allegations, United and Carolina continued to phrase their complaint in terms of the failure of Southern Bell to recognize a cost of capital differential in the settlement ratio. They did not provide any data to indicate that the end result of the settlement method the actual dollar revenues received impairs the financial integrity of their business. They did not even make that allegation explicitly. United and Carolina rely instead on the implication that a settlement formula which does not provide a higher rate of return to a company whose overall operations make it a riskier economic enterprise than its co-participant is ipso facto unjust and unreasonable.
 
 
 12
 The Commission properly characterized United's and Carolina's arguments as an attempt to attack the formula for dividing charges without alleging that the result of that formula is in fact unjust and unreasonable. United and Carolina insist that if the method of dividing charges is unjust and unreasonable, its result must also be unjust and unreasonable. Reply Brief for Petitioners at 10. This exercise in sophistry miscasts the issue by reversing the logic of the inquiry. A method of determining rates, or divisions thereof, is unjust and unreasonable if the result reached does not afford a compensatory return. One cannot, as United and Carolina try to do, reverse the order of this proposition and preserve its logical validity. See I. Copi, Introduction to Logic 202 (3d ed. 1968) (fallacy of affirming the consequent).
 
 
 13
 Under the facts of this case, it was not an abuse of discretion for the Commission to dismiss, without prejudice, United's and Carolina's petitions for failure to sufficiently allege facts which show that the division of charges under which they currently operate through route services with Southern Bell is unjust and unreasonable. The decision of the Federal Communications Commission is therefore
 
 
 14
 Affirmed.
 
 WILKEY, Circuit Judge, dissenting:
 
 15
 I respectfully dissent from the majority's decision in this case.
 
 
 
 [1]
 United, Carolina and Southern Bell had been operating a joint telecommunications service under a Traffic Agreement on file with the FCC. J.A. at A-2. See also Communications Act of 1934, § 211, 47 U.S.C. § 211 (1970) (carriers subject to Act must file copies of all contracts with other carriers with FCC). In July, 1972 Southern Bell proposed a supplement to this agreement to comply with an order of the North Carolina Utilities Commission that it renegotiate its settlement contracts to change from a combined local and toll rate of return to a toll rate of return only. J.A. at A-9. At a meeting to discuss this supplement, United and Carolina suggested that the settlement ratio should also be changed to recognize and reflect their higher cost of capital. Southern Bell refused and notified United and Carolina that their Traffic Agreement would be terminated on December 31, 1972 unless the supplement as proposed by Southern Bell was accepted. J.A. at A-4
 
 
 [2]
 Section 201(b) provides that
 (a)ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful. . . .
 Communications Act of 1934, 47 U.S.C. § 201(b) (1970).
 
 
 [3]
 United and Carolina make much of the fact that on November 28, 1972 Southern Bell gave notice that the existing Traffic Agreement would be terminated as of December 31, 1972 unless they agreed to an amendment proposed by Southern Bell. They argue that this notification precludes any factual finding that there was any agreement whatsoever on the division of charges between themselves and Southern Bell after January 1, 1973. Such an argument simply flies in the race of reality. Despite Southern Bell's technical notice of termination, the parties in fact continued to operate their joint telecommunications service and make settlements as if their agreement had not been terminated. J.A. at T-3. Moreover, in April 1973 the parties executed a written agreement providing for "interim settlement arrangements" under which they continue to operate their joint service. J.A. at T-3, T-17 to T-21
 Admittedly, these agreements were made with the expressed intention that they should not prejudice the position of either party in the proceedings pending before the FCC with respect to the petitions at issue in this case. Such a disclaimer would be completely effective to defeat any argument that by executing the interim agreement United and Carolina are estopped from challenging the reasonableness of its terms. It cannot be used, however, to deny the fact that petitioners have remained interconnected with Southern Bell and continue to accept a part of the revenues from jointly provided services. The disclaimer prevents any use of the interim agreement as a sword against United's and Carolina's allegations that its terms are unjust and unreasonable. It does not provide a shield against the reality of the parties' continual and existing joint operations.
 
 
 [4]
 52 F.C.C.2d 717, 718 (1975). The Commission found that United and Carolina had not "provided any support for their contention that the present method (could) not adequately accommodate the financial requirements of the independent companies," and that they had "not shown any direct relevance between the higher cost of attracting capital for overall operations and the method by which interstate tolls (were) divided." Id
 
 
 [5]
 The Commission's dismissal of their petitions was without prejudice. Id. Thus if United and Carolina can allege facts showing that the dollars they in fact receive do not cover their costs, they are free to renew their claim before the Commission
 
 
 [6]
 In their own Petitions for Reconsideration, United and Carolina noted that they have the option to "terminate their physical connections and discontinue through routes with Southern Bell." J.A. at V-3
 
 
 [7]
 United and Carolina have mistakenly identified section 15(6) as that part of the Interstate Commerce Act on which section 201 of the Communications Act of 1934 was based. Section 201 was actually adapted from subsections 1(5) and (6) of the Interstate Commerce Act. See S.Rep.No.781, 73d Cong., 2d Sess. 4 (1934); H.R.Rep.No.1850, 73d Cong., 2d Sess. 5 (1934). Nevertheless we note that the issue addressed in Alton bears directly on the question of the discretion of the Federal Communications Commission to decline to hold a hearing under section 205(a) on United's and Carolina's petitions charging a violation of section 201(b) by Southern Bell. Compare Communications Act of 1934, 47 U.S.C. §§ 201(b), 205(a) (1970) with Interstate Commerce Act, 49 U.S.C. § 15(6) (1970)
 
 
 [8]
 Lines of the Alton R. R. extended east from Peoria, Illinois which at the time was an important market for grain from the West and Northwest. Grain would be consigned to Peoria where it was stored in elevators for resale and reshipment to the East. Alton and connecting lines had voluntarily established tariffs for grain shipments outbound from Peoria to points east of Buffalo, New York, which under certain conditions provided for lower rates for grain originating from the West and Northwest than for other grain. This lower scale was called "reshipping" rates. See Alton R. R., supra, 287 U.S. at 232-33, 53 S.Ct. 124
 
 
 [9]
 The district court's jurisdictional dismissal was based on its conclusion that the order which Alton sought to challenge was negative rather than affirmative. 287 U.S. at 235, 53 S.Ct. 124. Alton had brought its suit under a provision of the Urgent Deficiencies Act, ch. 32, 38 Stat. 208, which transferred the jurisdiction of the Commerce Court to the United States District Courts. The grant of jurisdiction to the Commerce Court over "(c) ases brought to enjoin, set aside, annul, or suspend . . . any order of the Interstate Commerce Commission," Act of June 18, 1910, ch. 309, 36 Stat. 539, had been interpreted to restrict the court to review of only affirmative orders of the Commission. Procter & Gamble Co. v. United States, 225 U.S. 282, 293, 32 S.Ct. 761, 56 L.Ed. 1091 (1912)
 
 
 [10]
 The Supreme Court held that although the Commission's order was negative in form, it was in fact affirmative because the Commission's refusal of relief on the grounds that the divisions actually offered were not unlawful had the effect of reducing the divisions as fixed by the parties' agreement. 287 U.S. at 235-37, 53 S.Ct. 124